[S. F. No. 17554.   In Bank.   Apr. 23, 1948.]

JACK OWINGS, Petitioner, v. INDUSTRIAL ACCIDENT
COMMISSION et al., Respondents.

George Olshausen and John K. Hagopian for Petitioner.

Everett A. Corten, R. C. McKellips, Dan Murphy, Jr.,
T. Groezinger, Keith, Creede & Sedgwick and Frank J. Creede
for Respondents.

GIBSON, C. J.—The Industrial Accident Commission awarded petitioner 100 per cent permanent disability but denied compensation for the expenses involved in his treatment for diabetes mellitus on the ground that it was not of industrial origin. In this proceeding to review the award petitioner contends that the evidence establishes without conflict that his diabetic condition was caused by his employment.

During the course of his employment in August, 1939, petitioner suffered severe head injuries when the parting of a chain under tension caused a heavy steel pulley and cable to strike him on the right temple. He was convalescent for a year, during which time he received compensation. In August, 1940, he returned to work for the same company and continued to be employed more or less regularly. On October 30, 1942, when petitioner underwent a medical examination for entry into the United States Army, there were no indications of diabetes, but, two months later, while on a trip to his former home in Georgia, he developed symptoms of the disease.

About February 1, 1943, petitioner resumed his employment and in the following April filed an application with the commission for adjustment of claim. The commission made an award of 100 per cent permanent disability, which included the disease of diabetes, but that award was annulled in *J. G. Boswell Co.* v. *Industrial Acc. Com.*, 67 Cal.App.2d 347 [154 P.2d 13]. Thereafter, new hearings were had, and petitioner was held to have sustained 100 per cent permanent disability as a result of the 1939 injury. Compensation was awarded accordingly, but it was found that the diabetes was not of industrial origin and, therefore, noncompensable.

In order to receive compensation for a disease contracted by an employee it must affirmatively appear that the disease is caused by the employment (*Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 21 Cal.2d 742, 744 [135 P.2d 153]), and the only question for determination here is whether the evidence supports the commission's finding that the diabetes was not of industrial origin.

There is a direct conflict in the evidence as to whether the disease was caused by the blow which petitioner received in the 1939 accident. Some of the doctors testified that the pituitary gland might have been injured when petitioner was hit on the head with the pulley and that this could have affected the pancreas gland, causing a deficiency of insulin and the re-

sultant diabetes. Another doctor stated that the diabetes was " . . . not related to the accident of 1939 since the time interval was too long, [and] if the accident had been a contributing factor, it would have occurred at least one, two or three months following." Dr. Shepardson, a diabetes specialist called by the insurer, stated: "I can see no relationship between his head injury and his diabetes."

Petitioner concedes this conflict but relies on certain other testimony given by Dr. Shepardson which assertedly was not contradicted and which it is claimed related the disease to industrial causation on a different medical theory. Dr. Shepardson was asked on cross-examination whether he had any theory as to the cause of petitioner's diabetes, to which he replied, ". . . in the absence of certain precipitating factors, such as heredity or definite injections or sudden increase in weight . . . in a short period time, the guesses that I would have for the appearance of his diabetes would be a change from an active to an inactive life, the history of repeated alcoholism up to the time of his diabetes, and the change in habits of his eating when he was taken away from his regular work and regular income."

It is petitioner's contention that the possible factor of alcoholism as a cause of the disease was eliminated by later testimony of Dr. Shepardson, and that the evidence establishes without conflict that the other factors mentioned by him were present and resulted directly from the industrial injury.

There was evidence that petitioner drank more heavily before the accident than afterward, but it also appears that he consumed a great deal of alcohol during his trip to Georgia in 1943, shortly before the symptoms of diabetes first appeared. Dr. Shepardson testified that in his opinion the amount of alcohol petitioner consumed after the accident would not of itself have precipitated the disease without some previous damage to the liver from drinking or some other cause. There was no evidence that petitioner's liver had been examined for possible injury prior to the accident nor does the record show that anything was known about its true condition other than that the army medical report of October, 1942, indicated that it was normal at that time.

With respect to the other possible factors suggested by Dr. Shepardson, there was no evidence of any appreciable change in petitioner's diet as a result of the accident, and the evidence

is conflicting as to the kind and extent of his activity after he returned to work. The employer was engaged in the manufacture of linseed and cottonseed oil, and, prior to the accident, petitioner had worked in the cotton gin and as an operator of machinery which extracted lint from cottonseed. Each spring and summer he had worked at Tulare Lake constructing levees and installing and repairing pumps used in pumping excess water from near-by lands owned by his employer. Although petitioner testified that he did nothing but light, "handyman" work when he returned to work following his injury, there was evidence that he assisted the mechanics in repairing machinery and, at times, repaired it himself, and that he worked "out in the lake bed on the pumps and in the fall returned to the plant and worked in the cotton gin and the linters." A fellow employee testified that after the accident petitioner did both light and heavy work and that in general he did the same type of work both before and after it occurred. The company work sheets indicated that petitioner usually averaged more than 40 hours per week after he returned to work.

■ In this state of the record, we cannot say that the commission was required to accept the "guesses" of Dr. Shepardson as conclusively establishing that the disease was of industrial origin. A "Guess, in current best usage, implies a hitting upon (or attempt to hit upon), either at random or from insufficient, uncertain or ambiguous evidence." (Webster's Dictionary of Synonyms [1942 ed.], p. 188.) ■ An opinion which is based on guess, surmise or conjecture has little, if any, evidentiary value (*Brant* v. *Retirement Board of S. F.*, 57 Cal.App.2d 721 [135 P.2d 396]; see *Estate of Stone*, 59 Cal.App.2d 263 [138 P.2d 710]). Although it may be possible that the witness did not intend to indicate that his statement was merely surmise or conjecture, the commission nevertheless could properly give the word its usual meaning and conclude that the doctor did not profess to give an expert opinion on the matter.

In any event, the value of an expert's opinion is dependent upon its factual basis (*Estate of Scott*, 1 Cof. 271; *Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933]; *Douglas* v. *Berlin Dye Works etc. Co.*, 169 Cal. 28 [145 P. 535]; *Gazzera* v. *City and County of San Francisco*, 70 Cal.App.2d 833 [161 P.2d 806]; *Thoreau* v. *Industrial Acc. Com.*, 120 Cal.App 67 [7 P.2d

767] ; *Barnett* v. *Atchison etc. Ry. Co.*, 99 Cal.App. 310, 317 [278 P. 443]), and where, as here, the evidence is conflicting as to whether the possible contributing factors indicated by Dr. Shepardson were in fact present in petitioner's case, we cannot hold as a matter of law that the evidence necessarily compelled the conclusion that the diabetes was of industrial origin.

The award is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.