[Civ. No. 8403.   Third Dist.   Sept. 28, 1953.]

ASSOCIATED INDEMNITY CORPORATION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MINNIE JOHNSON, Respondents.

Mullen & Filippi for Petitioner.

Chapman & Nichols, Edmund J. Thomas, Jr., and T. Groezinger for Respondents.

VAN DYKE, P. J.—The widow of Hobart Johnson filed her application for adjustment of claim with respondent commission. She alleged that on December 9, 1951, while

employed as a laborer by the Trask Company, Johnson had suffered "heart failure from over exertion" while digging a pit, "resulting in Coronary Occlusion causing death." The respondent commission awarded her compensation and this proceeding was brought to review that action.

The following appears: Decedent had been in apparent good health prior to the date of his death. He had not been attended by a doctor for illness of any kind during the preceding five years. He was employed five days per week as a janitor for another employer and on Saturdays and Sundays he worked for the Trask Company. Decedent did not complain of aches or pains while working on the day he died. Decedent, with his employer, left San Francisco in the morning and proceeded to Modesto where they did further digging in a pit 9 feet long by 5 feet wide which had been partially dug. They alternated working in the pit at about 15-minute intervals. They were digging the pit with hand shovels, one shoveling the dirt from the pit bottom to the surface, the other shoveling it from there into a small truck. When the truck was filled they drove about 5 miles to a dump where they shoveled the dirt out of the truck. The elapsed time from pit to dump was about 25 minutes. They had made three trips and had returned when decedent got into the pit, picked up his shovel, commented there was only about a foot and a half more to be dug, collapsed and died. The death certificate gave the cause of death as "Coronary occlusion, arteriosclerosis of coronary arteries with atheromatous degeneration of blood vessel walls."

Doctor Ransom, Coroner of Stanislaus County, said that the autopsy "showed the customary hardening of the arteries over the entire system" extending "to the blood vessels supplying heart muscle." He said he found a coronary occlusion; and a diseased area where the occlusion took place; that there was "atheromatous degeneration and thickening and shrinking of the lining of the artery"; and that the coronary artery at the place of the occlusion was considerably smaller than normal. He found that the final occlusion was caused by little crusts from the atheromatous lining of the diseased artery. He testified that the development of arteriosclerosis took a long period of time; that he had known of people so afflicted falling dead while walking on the street, or who were working, driving or who became scared; that he considered shoveling hard work.

On the issue of causation the witness was vague, but he said that with the existing arterial condition the exertion of shoveling would be a factor in the occlusion, though a minor one. Doctor Gianelli, petitioner's witness, said there was nothing abnormal in the work the decedent had been doing; that a normal person doing that work would not have died therefrom; that exercise has a direct effect on the expanding and contraction of the arteries in the area of the heart and increased the demand for blood supply to the heart muscle fibres; that decedent's activities were not more than a normal being could withstand and that one who died thereunder could have died any other time "in the middle of the night, after a large meal, after a period of emotional stress and strain—any of those factors could have been the precipitating event." The following appears in the transcript: "Q. The question is . . . did this exertion on this man with this arteriosclerosis play any part in his death at that time. . . . A. I will have to answer yes to that. . . . It had a dual effect: One, it had the effect of increasing the demand for blood by the heart muscle, the reason for that being that the heart muscle had to work harder because he was working harder and the demand for oxygen was increased. The oxygen is carried by the blood; therefore, more blood was needed for a given period of time. The increased blood flow could agitate this material that had hardened the artery and in agitating it could have loosened it and caused it to break off and block, pile up and block a vessel." He said that this effect could have been caused by any normal activity such as eating meals or walking a block; that just the process of existing which demands oxygen consumption "is enough of a stimulus to have caused it"; and that he had known many individuals with such a heart condition to die while sleeping in bed. There is nothing in the record to indicate the occurrence of any hurrying or any sudden strain or stress or to indicate that the shoveling which the decedent had been doing was under abnormal conditions requiring great or long sustained exertion. The man was shown to have been normally doing the work he was hired to do.

■ ". . . It is now too well settled in this state to require extended citation of authority that the employee is entitled to compensation for disability proximately caused by industrial injury regardless of whether the employee's condition at the time of injury was average or subnormal. Thus, an aggravation of an existing infirmity where such aggravation

is proximately caused by the employment is compensable, even though a normal man would not have been adversely affected. This rule applies even though it is shown that the employee would have ultimately died from such disease, if the evidence shows and the commission finds that the injury hastened or produced his death. . . . Industry takes the employee as it finds him. ■ A person suffering from a preexisting disease who is disabled by an injury proximately arising out of the employment is entitled to compensation even though a normal man would not have been adversely affected by the event.

■ ". . . The burden of proof that the injury arose out of and in the course of the employment, and was proximately caused thereby is on the employee. . . . It is obvious that whether the employment proximately precipitated the collapse of a preexisting diseased heart and proximately caused it to collapse before normal progressive developments would have resulted in the collapse is a question of fact." (*Liberty Mutual Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555, 558-559 [166 P.2d 908].)

■ The facts of this case in the light of the applicable rules of decision which we have stated furnish substantial support for the finding of the commission that Johnson suffered an injury which was proximately caused by his employment. Although he was afflicted with general arteriosclerosis which, at the point where the final occlusion occurred, was far advanced, so that death would have occurred in time from the normal progress of the disease, yet the exertion which the performance of his work called for increased the hazard of final occlusion which occurred and which caused his death. The exertion was sufficient, according to the expert testimony, to have brought about, by means of the increased contraction and expansion of the artery and the accelerated blood flow, a dislodging of particles from the diseased lining, causing a block. This the autopsy surgeon found had occurred, and caused the fatal occlusion. The experts testified that this exertion could have had the effect that the autopsy disclosed. That is sufficient support for the finding of the commission as to proximate cause.

The award is affirmed.

Schottky, J., and Peek, J., concurred.