[Civ. No. 16585. First Dist., Div. One. Sept. 22, 1955.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JOSEPH STRAUSS, Respondents.

Edmund G. Brown, Attorney General, and Gerald F. Carreras, Deputy Attorney General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Leonard, Hanna & Brophy and Paul A. Eisler for Respondents.

Charles P. Scully, as Amicus Curiae on behalf of Respondents.

BRAY, J.—Petitioner seeks review and the annulment of an award and decision after reconsideration made by the respondent Industrial Accident Commission. The award gave

respondent Joseph Strauss permanent disability benefits from the Subsequent Injuries Fund. The award was based on a finding that at the time of the industrial injury respondent Strauss suffered from a previous physical disability or physical impairment resulting from heart disease.

## QUESTIONS PRESENTED

1. May the commission render an award, under section 4751, Labor Code, against the Subsequent Injuries Fund for unmanifested (asymptomatic) disease processes which preexist an applicant's industrial injury, when such processes do not constitute an actual disability and were theretofore unknown?

2. Is the employer liable for the entire disability?

## FACTS

On May 20, 1952, Joseph Strauss filed an application in which he alleged injury arising out of the course of his employment. It was claimed that while employed as a stock clerk on November 19, 1951, by respondent General Supply Company, Strauss sustained an industrial injury as he was "loading truck with packages resulting in torn heart muscle —resulting in shortness of breath and general weakening of constitution and of health." He was taken to a hospital and remained under a doctor's care until April 18, 1952. He returned to work (same employer) on May 8, 1952, and continued in his employment until May 28, 1952, when (on this latter date) in the process of lifting a package he again experienced pain and dizziness. Medical testimony indicates that Strauss sustained coronary thrombosis on November 19, 1951, and on May 28, 1952. In the application for adjustment of claim, employee Strauss filled out the line directing the applicant to describe any prior permanent disability or impairment, with the word "none."

At the hearing two doctors testified that although the applicant suffered from a preexisting heart disease, the work he was doing on November 19, 1951, aggravated the condition. A third doctor testified in effect that the incident of November 19th was an incident occasioned by the normal progression of the underlying heart disease. The commission issued findings and award on November 19, 1952, decreeing that respondent Strauss had suffered injury to his heart on November 19, 1951. Sometime later, and after the respondent insurance carrier had petitioned the commission for a termination of total disability benefits and respondent Strauss had

petitioned for a permanent disability rating, an order issued from the respondent commission whereby the petitioner State of California (Subsequent Injuries Fund) was joined as a party defendant.

At the hearing thereon a Doctor Rosenman testified on behalf of the applicant to the effect that immediately preceding the incident of November 19, 1951, the applicant was afflicted with the disease of arteriosclerosis and the incident of November 19, 1951, would not have occurred had this disease not been present; that had he known of applicant's condition immediately prior to the incident of November 19, 1951, he would have advised against any work which might cause more than a moderate strain, and would have advised against the employee's doing work such as he was doing; that a further infarction, should it occur, would have no relation to the previously decreed industrial infarctions, but would be prompted by the underlying disease.

Another physician, called by the insurance carrier, testified that he agreed iwth Dr. Rosenman in the above premise; that the employee was physically incapacitated for the work he was doing on November 19, 1951; that the incident on that date would not have occurred if the employee was not suffering from arteriosclerosis.

There was medical testimony to the effect that even had Strauss been examined one hour before his industrially caused infarction, the underlying arteriosclerotic condition could not have been medically ascertained.

At the hearing thereon Strauss testified that until the incident of November 19th he was able to perform his work fully without any physical disability, had no signs or symptoms, and was totally unaware that he had a heart condition.

The commission found that at the time of his injury he "suffered from a previous physical disability or physical impairment resulting from heart disease. The permanent disability resulting from the industrial injury and the previous impairment or disability of applicant consists of cardiac impairment limiting the applicant to sedentary work only."

1. *Does Section 4751, Labor Code\* Apply?*

In determining this question we must assume that the commission impliedly found that the applicant at the time of

---

\*That section reads: "If an employee who is *permanently partially disabled* receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which

the incident of November 19th had a preexisting heart condition which was unknown which had in nowise interfered with his work, and which probably would not have been discovered by a medical examination.† The question of whether section 4751, Labor Code, was intended to cover asymptomatic conditions as distinguished from symptomatic ones has never been determined. Section 4750, Labor Code, which is the section providing that where an employee suffering from a previous physical disability or physical impairment sustains an industrial injury, his employer at the latter time is liable for compensation only for that portion of the ensuing disability due to the later injury has been construed both that it applies to asymptomatic conditions and that it does not so apply. In *Idaho Maryland Mines Corp.* v. *Industrial Acc. Com.*, 104 Cal.App.2d 567 [232 P.2d 11], in upholding a ruling of the commission finding that the workman's entire disability was due to an industrial injury which lighted up a preexisting unknown heart condition, and an award against his employer at the time of the injury for such disability, the court said (p. 570) : "Petitioner's further contention, that Labor Code, section 4750, also applies, is likewise without merit. That section applies only to cases where the employee presently 'is suffering from a previous permanent disability or physical impairment.' Here, although the evidence shows that Duncan had a latent heart disease prior to his injury, his as well as the medical testimony establishes without conflict that he had no 'permanent disability or physical impairment' prior thereto." This holding is directly contrary to *Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615 [52 P.2d 215], where, as in the Idaho Maryland case, the preexisting condition was latent and unknown. That case held (p. 618) : "We find nothing in the above authorities, or in others that have come to our attention, that in any way militates against the apportionment made in the present case. As we read the record in this proceeding, the petitioner is now suffering from a

would have resulted from the subsequent injury alone, and the combined effect of the last injury *and the previous disability or impairment* is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article." (Emphasis added.)

†If the findings of the commission are supported by any substantial evidence, they cannot be disturbed on appeal. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 443 [213 P.2d 11].)

disability made up in part of an industrial disability growing out of the injury, including the aggravation or 'lighting up' of the preexisting dormant arthritic condition, and, in part, though in a lesser degree, of what may be termed a nonindustrial disability resulting from the normal progress of the preexisting arthritis. Obviously, the latter disability is not attributable to industry and should not be saddled thereon. It is this latter or nonindustrial disability, resulting from the natural and normal progress of the preexisting condition, that underlies the finding that petitioner's permanent disability is 'partly caused by preexisting dormant disease and partly by said injury' and requires the apportionment here made.''

It must be borne in mind that section 4750 deals only with the proportion of liability of the employer and is distinct and apart from the proportion of liability of the Subsequent Injuries Fund provided by section 4751.

■ In construing section 4663, Labor Code (the basic law of apportionment) it has been held, in effect, that if the commission finds that the preexisting disease or condition was "disabling" (that is, symptomatic and interferes with the employee's ability to work) then an apportionment between the prior disability and the disability due to the subsequent injury would be made. (See *Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 39 Cal.2d 83 [244 P.2d 889].)

■ However, if the preexisting condition were found to be asymptomatic, and the industrial injury aggravated this condition and the resultant disability is partially due to the natural and normal progress of the preexisting condition and partly by the industrial injury "lighting up" or aggravating that condition, an apportionment will be made and the employer held liable only for the percentage of disability chargeable to the injury. (Lab. Code, § 4663; *Tanenbaum* v. *Industrial Acc. Com.*, *supra*, 4 Cal.2d 615, 619.) ■ If the resultant disability is entirely due to the industrial injury lighting up the previous dormant condition, then the employer is liable for that disability and there can be no apportionment. (*Id.*, pp. 617-618.) (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 120 Cal.App.2d 423 [261 P.2d 25]; *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555 [166 P.2d 908].)

■ The above rules do not apply to occupational diseases, such as silicosis, where the rule is that the employee, at his option, may obtain an award for his entire disability against

any one or more of successive employers, if the disease were contributed to by the employment of such employer or employers, even though the particular employment is not the sole cause of the disability. (See *Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884].) ▮ Nor does it apply to death cases, where it has been held that the employer at the time of the fatal injury is solely responsible. (See *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 P.2d 17] ; *Mullane* v. *Industrial Acc. Com.*, 118 Cal. App. 283 [5 P.2d 483].)

Unfortunately the Legislature failed to define the words it used in section 4751. That section starts out, "If an employee who is permanently *partially* disabled . . ." and later states if the "previous *disability or impairment* . . ." (Emphasis added.) ▮ " '. . . under the well-established meaning of the term "disability," as used in compensation law, there is a combination of partial or total physical incapacity and of inability to work. . . .' " (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 124 Cal.App. 378, 381 [12 P.2d 1075].)

In Law Society Journal, volume XIII, No. 1, page 334, appears: "The words 'incapacity' and 'disability' are usually interchangeable, and ordinarily are used to denote the same thing—loss of wage-earning power . . ." In *Inman* v. *Carl Furst Co.* (1930), 92 Ind.App. 17 [174 N.E. 96], the court said that their Workmen's Compensation Law "recognizes a clear distinction in the use of the words disability and impairment. The former means inability to work, the latter has reference to 'total or partial loss of the function of a member or of the body as a whole.' " ▮ Thus, it appears that even "impairment" is not an unknown condition but one that causes loss of function of the body in whole or in part.

The history of section 4751 is a brief one. It was originally passed in 1945. At that time, after the words at the beginning of the section "If an employee who is permanently partially disabled" appeared the following: "by reason of the loss of, or loss of use of, a hand, an arm, a foot, a leg, or an eye." Thus the only employee who then was entitled to payment from the Subsequent Injuries Fund was one who at the time of an industrial injury had lost the use of, or lost, a specified member of his body. An employer could see that a prospective employee had such a condition, and would know that if such person suffered an injury while in his employ, the employer would not be required to compensate for the disability already existing. The section did not apply to an employee having

a disability or an impairment in other respects than those specified. An employee with a partial disability other than one caused by a specified member of his body, if subsequently injured, could make no claim on this fund. In 1949, evidently for the purpose of including other disabilities than those specified, the quoted phrase was eliminated from the section.

We can find neither in the original act, nor in its present form, any indication that the Legislature intended that either the term "disability" or "impairment" as used therein was not to be limited to actual manifest and symptomatic disabilities which antedated an industrial injury.

Hanna in "The Law of Employee Injuries and Workmen's Compensation," volume 2, page 269, states: "It is insufficient to show preexisting pathology which, at the time of industrial injury, had not become disabling. The recovery permitted under the law cannot be predicated upon proof of preexisting pathologies, nor upon the existence of present disability based on preexisting pathologies. The employee must show that prior to his industrial injury he suffered 'permanent disability or physical impairment.' "

*Zyla* v. *A. D. Juilliard & Co.*, 277 App.Div. 604 [102 N.Y.S. 2d 255], makes an interesting interpretation of the New York Subsequent Injuries Law. The Workmen's Compensation Law, section 15, subdivision 8, as added by Laws of 1945, ch. 872, provides for payment from a fund* for a portion of permanent total disability after permanent partial disability. The act declares the legislative policy to be that every person is entitled to a right to self support even "after he has been physically handicapped by injury or disease," and that the purpose of the act is to encourage the employment of physically handicapped persons, and to make a logical and equitable adjustment of the liability under Workmen's Compensation Law which an employer must assume in hiring such persons. It then defines "permanent physical impairment" as "any permanent condition due to previous accident or disease or any congenital condition which is or *is likely to be* a hindrance or obstacle to employment." (Emphasis added.) In construing that act the court stated, referring to the condition preexisting the industrial injury (p. 257): "The statute does not in express terms require that the parties know of the existence of the

---

*The New York statute differs from ours in this, that there the fund reimburses the employer for the percentage of disability chargeable to the preexisting condition. In California that percentage is paid to the employee.

permanent physical impairment. But the knowledge on the part of the employer, though not necessarily of the employee, is required by the implication of the statutory formula . . .

"That knowledge by the employer of the impairment, arising either from its obvious nature or from actual knowledge of a latent impairment, is essential is suggested by the fact the Legislature would have no need to encourage the employment of persons whose impairments are so obscure as not to be apparent, because they would meet no special barriers to general employment." To the same effect is *Fowler* v. *Miller*, 122 N.Y.S.2d 495; *Bellospirito* v. *Smith*, 137 N.Y.S.2d 601.

Thus, the New York court held that although the act applies to a preexisting condition which is *likely* to be a hindrance to employment, that condition must be known to the employer.

In *Gorman* v. *Miner-Edgar Chemical Corp.* (1938), 16 N.J. Misc. 170 [198 A. 404], dealing with New Jersey's "one per cent fund," somewhat similar to our Subsequent Injuries Fund, the court said (p. 406) : "A weakness, whether pathological or traumatic in origin, which does not become manifest until an accident occurs, is not ordinarily considered as a disability, being too indefinite and speculative for practical purposes."

In *Scott* v. *Alaska Ind. Board* (1950), 91 F.Supp. 201, the court was considering the Alaska second injury law which provided compensation from a fund, if the second injury when "combined with a previous disability or injury," caused total permanent disability. The court held (p. 203) : "Accordingly, it would seem that the term 'prior disability or injury' in the statute does not necessarily mean a prior compensable disability or injury but *does require a manifestation of such condition* . . . [T]he term 'prior disability,' as used in second injury provisions, is not to be construed as including prior unmanifested disability. Nor is this view inconsistent with the social aim of such statutory provisions to encourage the hiring of the partially disabled, for obviously where the prior condition does not manifest itself, no ground for discrimination in hiring would exist." (Emphasis added.) While the Scott case dealt with silicosis, the decision was not based upon the occupational disease rule such as we have in California.

*Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 44 Cal.2d 604 [283 P.2d 1039], does not discuss the problem present here. That case involved only the *method* of apportionment between the fund and the employer. There the employee had a permanent partial disability consisting of

impairment of the motion of the spine, the result of tuberculosis of the spine. Even though the tuberculosis had become quiescent, the disability was obvious.*

In the "Subsequent Injuries Fund Report of the Subcommittee of Assembly Interim Committee on Finance and Insurance" (vol. 15, No. 7, 1953-1955, Assembly Interim Committee Reports), attention is called to the wide variety of pathologies (most of them asymptomatic) which have been urged as a basis for commission awards against the Subsequent Injuries Fund: "heart disease; arthritic processes; nervous tremors; Parkinson's Disease; tuberculosis; syphilis; varicosities; diabetes; hysteria, and other forms of mental derangement; harelip; speech impediments; weak abdominal walls; decreased mental capacity; epilepsy; nervousness; hemorrhoids; false teeth; general debility and undernourishment; flat feet; tonsillitis; calluses and bunions on feet; knock-knees; and schizophrenia of the paranoid type." The report further states that to apply the provision for preexisting diseases to more than easily recognizable permanent objective disabilities would convert the Subsequent Injuries Law into a state health insurance plan (applicable only to one class, the employed). In addition, it would provide life annuity benefits when the combined effect of a previous disease and a subsequent injury results in a permanent disability of 70 per cent or more of total disability. Such a legislative intent should not be inferred. It should clearly appear.

We conclude that section 4751, Labor Code, was not intended to apply to asymptomatic disease processes which were unknown to both employee and employer and which in nowise interfered with the employee's ability to work.

2. *Employer's Liability.*

The commission found that the percentage of the employee's disability is 90; that the proportion of said permanent disability or impairment which preexisted is 45, and the percentage of permanent disability due to the injury is 45. Both the attorney general and the amicus curiae contend that under the evidence there can be no apportionment and that

---

*In the section the correlative terms "disabled," "disability," and "disabilities" appear eight times, while the term "impairment" is used only once. It would, therefore, appear that "impairment" is of secondary importance to the term "disabled" in delineating Subsequent Injuries Fund apportionment. To warrant an apportionment, "impairment" must be taken to mean impairment of working ability as distinguished from an asymptomatic impairment of a bodily function or organ.

the employer is liable for the entire disability; that in the case of an asymptomatic disease or condition the employer takes the employee as it finds him, and if the industrial injury lightens up or aggravates that condition the employer is liable for the entire disability following the injury. That is not the law. As heretofore pointed out the employer is liable for all disability caused by the injury, but not for that portion of the disability, if any, which is due to the preexisting disease apart from the results of the injury. "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." (Lab. Code, § 4750.) "It was a question of fact for the determination of the commission as to whether applicant's permanent disability resulted from the effects of the accident, including the aggravating effect of the accident upon a preexisting disease, or whether the disability or a part thereof resulted from the normal progress of a preexisting disease. If a part of the disability resulted from the normal progress of a preexisting disease then a portion of the permanent disability rating herein should have been attributed to the preexisting disease." (*Industrial Indem. Co.* v. *Industrial Acc. Com., supra,* 95 Cal.App.2d at p. 450.)

There is substantial medical evidence here to support the commission's finding that although the industrial injury lightened up and aggravated the preexisting condition, the present disability is not entirely due to the injury, but partially to it and partially to the disease without reference to the injury.

That portion of the award providing for payment of compensation by the Subsequent Injuries Fund is annulled.

Peters, P. J., and Wood (Fred B.), J., concurred.

Petitions for a rehearing were denied October 21, 1955, and the petitions of Respondents Strauss and Industrial Accident Commission for a hearing by the Supreme Court were denied November 16, 1955. Carter, J., was of the opinion that the petitions should be granted.