[L.A. No. 29533. In Bank. June 28, 1968.]

ERNEST J. ZEMKE, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, W. S. SHAMBAN
AND COMPANY et al., Respondents.

Levy, DeRoy, Geffner & Van Bourg, Jack P. Koszdin and Ernest Stroloff for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Nathan Mudge, Herbert H. Hiestand, Jr., and James P. Cudahy for Respondents.

TOBRINER, J.—Petitioner seeks review of the appeals board's opinion and order denying reconsideration of its prior decision after reconsideration in which the appeals board found that 50 percent of petitioner's permanent disability was attributable to his preexisting asymptomatic arthritic condition. Since the apportionment is not supported by

substantial evidence and is based on an error of law we must annul the order.

The petitioner, Ernest J. Zemke, worked as a maintenance mechanic for W. S. Shamban and Company in Newberry Park, California, prior to December 18, 1965. On that date he injured his back while picking up a barrel of scrap. The parties agree that petitioner's injury arose "out of and in the course of the employment." (Lab. Code, § 3660.) The only issue concerns the propriety of the apportionment under Labor Code section 4663.

 Section 4663 provides that, "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." This "section must be read in light of the rule that an employer takes the employee as he finds him at the time of employment and when subsequent injury lightens up or aggravates a previously existing condition rendering it disabling, liability for the full disability without proration is imposed upon the employer." (*Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79, 83-84 [172 P.2d 884].)

Since the employer must compensate not only for the disability caused solely by the industrial injury, but also for that resulting from an aggravation or "lighting up" of a nondisabling disease preexisting the industrial injury, the appeals board may apportion the disability under section 4663 only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" of the pre-existing disease. (*Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 438, 443 [55 Cal.Rptr. 254, 421 P.2d 102]; *Tanenbaum* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 615, 617-618 [52 P.2d 215]; *Industrial Indemn. Co.* v. *Industrial Acc. Com.* (1949) 95 Cal.App.2d 443, 450 [213 P.2d 11]; 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1967) § 14.03[3][b], at pp. 14-21—14-23.)

 "Whether a disability results in whole or in part from 'the normal progress of a preexisting disease' (*Industrial Indemn. Co.* v. *Industrial Acc. Com.* [*supra*], 95 Cal. App.2d 443, 450) or represents a fully compensable lighting up or aggravation of a preexisting condition is a question for the [appeals board] to determine, and its award will not be annulled if there is substantial evidence to support it. [Cita-

tions.]'' (*Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 593 [21 Cal.Rptr. 545, 371 P.2d 281].) We therefore review the record to determine whether substantial evidence supports the board's finding that 50 percent of petitioner's disability was attributable to his preexisting arthritic condition.

The record contains medical reports from three doctors and the testimony of one doctor. All three doctors agree that petitioner's arthritic condition was totally asymptomatic prior to his industrial injury.

Dr. Nippell, an orthopedic surgeon, examined petitioner for the first time on February 15, 1966.[1] Dr. Nippell diagnosed his condition as: ''Acute low back strain superimposed on preexisting osteoarthritic changes.'' His second report, dated March 16, diagnosed petitioner's condition as ''(1) probable low back strain with persistence of symptoms due to preexisting osteoarthritic changes; (2) Possible osteoarthritis involving the right hip.'' In a letter dated September 9, 1966, in response to an inquiry by the compensation carrier as to apportionment, Dr. Nippell stated: ''I would think that a fair division would be fifty per cent due to pre-existing problems, and fifty per cent due to the aggravating incident.'' Dr. Nippell does not mention any facts upon which he based this opinion. And he does not indicate in any of his medical reports that part of petitioner's disability would have resulted from the normal progress of his osteoarthritic condition even if he had not sustained the industrial injury.

Dr. Cozen, a specialist in orthopedics and fractures who examined petitioner on August 9, 1966, stated in his report of August 10 that petitioner's ''present condition is caused by the accident . . . superimposed on previously existing non-symptomatic degenerative disc diseases.'' He does not mention the apportionment issue and nowhere states any facts which would support an apportionment finding.

The independent medical examiner, Dr. Schoneberg, an orthopedic surgeon, examined petitioner on January 3, 1967. In his report of January 5 he stated that petitioner suffered from a ''Chronic lumbar sprain superimposed on degenerative disc disease, . . . as well as osteoarthritic changes, . . .'' He further reported: ''I feel that the patient's persistent low back complaints, as stated by previous examiners, both Doctor

---

[1]Dr. Larson, who examined and treated petitioner in January 1966, referred petitioner to Dr. Nippell because Dr. Larson believed that petitioner's continuing symptoms required a specialist's examination.

Nippell and Doctor Cozen, are due to the pre-existing degenerative changes . . . . In view of the length of time since his initial injury, I feel that patient can be rated as having a permanent and stationary disability . . . . In arriving at a permanent disability rating, I feel there should be an apportionment from his pre-existing degenerative changes of 50% and his industrial injury of 50%.''

Dr. Schoneberg testified at the hearing of April 26, 1967. In response to the question, ''Could you state if ever, but for the accident, the applicant would have had symptoms?'' Dr. Schoneberg answered: ''Well, at the time of the accident he was 65, approximately, and if he had gone that length of time, I mean, it would be an educated guess, he may just have an occasional—I would say would be unusual didn't have occasional backaches with his x-ray findings. You can have that without any arthritic problem, too. As to when you had it, *he may have never had it,* he may have had it. . . . *It would be a matter of speculation.''* (Italics added.) Dr. Schoneberg replied affirmatively to the question, ''And it was the impact on this asymptomatic pathology by this injury which brings on this total picture; is that a fair way of stating it?'' Finally, answering the question whether he still had the same opinion respecting apportionment as he stated in his report, Dr. Schoneberg said: ''The percentage I think is fair in view of the fact that he does have considerable change. One would assume he had a simple sprain. One would hope or anticipate he would be over it in a reasonable period of time, but this combination, I think, is the only way I could apportion it with any fairness.''

■ Although the board must rely on expert medical opinion in resolving the issue of apportionment, an expert's opinion which does not rest upon relevant facts or which assumes an incorrect legal theory cannot constitute substantial evidence upon which the board may base an apportionment finding. (*Owings* v. *Industrial Acc. Com.* (1948) 31 Cal.2d 689, 692-693 [192 P.2d 1]; *West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 716-720 [180 P.2d 972]; cf. *Jones* v. *Workmen's Comp. App. Bd.* (1968) *ante,* pp. 476, 479-480 [67 Cal.Rptr. 544, 439 P.2d 648].)

■ Dr. Nippell's opinion that a 50 percent apportionment would be ''fair'' poses a mere legal conclusion. The question whether the disability is partially due to the normal progress of the disease presents an issue of fact which the board must resolve on the basis of expert medical opinion. Dr.

Nippell's report, however, nowhere discloses either facts or opinion on the relationship between applicant's disability and what would have been the normal progress of his preexisting condition in the absence of his industrial injury. Instead, the report states an opinion on a legal matter: the proper apportionment in this case. Such an opinion, especially when it fails to disclose its underlying basis, does not constitute competent evidence upon which the board may rely in ordering apportionment.

 Although Dr. Schoneberg considered whether petitioner would have suffered from his preexisting condition in the absence of the industrial injury, his responses to two questions posed at the hearing demonstrate that he did not rest his opinion of 50 percent apportionment on the likelihood that 50 percent of petitioner's disability would have resulted from the normal progress of his preexisting condition in the absence of his industrial injury. (Cf. *Reynolds Elec. etc. Co. v. Workmen's Comp. App. Bd., supra,* 65 Cal.2d at p. 443.)

In response to the question whether petitioner would have suffered any of his present symptoms in the absence of his industrial injury, Dr. Schoneberg testified that ''he may have never had it,'' and that ''it would be a matter of speculation.'' His answer to the question whether he still had the same opinion on apportionment as that expressed in his report indicates that he based his opinion on the fact that petitioner would have suffered less and recuperated more quickly if he did not have the preexisting condition.

The board also construed Dr. Schoneberg's testimony as indicating that he predicated his opinion as to apportionment on his belief that petitioner's preexisting condition hindered his recovery from the industrial accident. The board stated in its opinion and order that ''we have concluded that 50% of applicant's over-all disability is attributable to the preexisting degenerative changes referred to by Dr. Schoneberg in his report and testimony. Dr. Schoneberg testified to the effect that if petitioner did not have the pre-existing underlying condition he would have improved more and sooner.'' This statement of Dr. Schoneberg constitutes the sole basis upon which the board found apportionment.

The board's finding of apportionment and Dr. Schoneberg's opinion upon which the board relied rest upon an incorrect theory of law. A disability resulting from an industrial injury is fully compensable even though a preexisting disease increases the disability caused by the injury or

interferes with healing and recovery. (2 Hanna, California Law of Employee Injuries and Workmen's Compensation, *op. cit. supra,* § 14.03[1], at p. 14-18.) "The underlying theory is that the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman's physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience." (*Tanenbaum* v. *Industrial Acc. Com., supra,* 4 Cal.2d at p. 617; *Colonial Ins. Co.* v. *Industrial Acc. Com., supra,* 29 Cal.2d at p. 84; *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1953) 120 Cal.App.2d 423, 425-426 [261 P.2d 25].)

We cannot accept respondents' contention that *Tanenbaum, supra,* requires that we uphold the apportionment here. In *Tanenbaum* the applicant, who was injured in the course of her employment as a grocery clerk, also suffered from a preexisting asymptomatic arthritic condition. The Industrial Accident Commission attributed 33⅓ percent of her disability to her preexisting condition. In holding that substantial evidence supported the apportionment finding, we emphasized that the evidence established "what may be termed a nonindustrial disability resulting from the normal progress of the preexisting arthritis." (4 Cal.2d at p. 618.) In particular, we pointed to the following language in one of the medical reports filed with the commission in which an apportionment recommendation was made: ". . . and the balance [of her disability] is due to the natural progress of a preexisting arthritis in a person of her age." (*Ibid.*)

The medical reports in the instant case, on the other hand, nowhere indicate that petitioner's disability was partially "due to the natural progress" of his preexisting arthritic condition. The only medical expert who stated his reasons for recommending apportionment, namely Dr. Schoneberg, stated that it would be speculative to conclude that petitioner would have had any disability if he had not suffered the industrial injury and, moreover, alleged that the apportionment was "fair" because petitioner would have *recovered* sooner had he not had the preexisting condition.

Since, as we have explained above, Dr. Schoneberg's opinion stems from an incorrect legal theory, and Dr. Nippell's recommendation of 50 percent apportionment constitutes a bare legal conclusion, we must hold that the board's finding of 50 percent apportionment is not supported by substantial

evidence. ''We have heretofore reminded the W.C.A.B. of the Legislature's command that workmen's compensation laws be liberally construed 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' (Lab. Code, § 3202; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. Appeals Board* (1966) 65 Cal.2d 429, 433 [55 Cal.Rptr. 248, 421 P.2d 96].) We have also said that the W.C.A.B. is not entitled to rely on medical reports which it knows to be erroneous. (*McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82, 92 [48 Cal.Rptr. 858, 410 P.2d 362]); similary, it cannot rest a decision on medical reports that are no longer germane.'' (*Jones* v. *Workmen's Comp. App. Bd., supra, ante,* at p. 480.) A medical report predicated upon an incorrect legal theory and devoid of relevant factual basis, as well as a medical opinion extended beyond the range of the physician's expertise, cannot rise to a higher level than its own inadequate premises. Such reports do not constitute evidence to support a denial of full compensation for an industrially caused disability.

The decision of the Workmen's Compensation Appeals Board is annulled, and the cause is remanded to that board for further proceedings consistent with the views herein expressed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.