[Civ. No. 12368. Third Dist. Apr. 6, 1970.]

BUD R. COLLINS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
GEORGE M. OLSEN et al., Respondents.

**COUNSEL**

Levy & Van Bourg and Gerald J. Tiernan for Petitioner.

Everett A. Corten, Lionel K. Hvolboll and Philip M. Miyamoto for Respondents.

## OPINION

**PIERCE, P. J.**—Petitioner Collins seeks review of the appeals board's opinion and order denying reconsideration of a referee's decision which found:

(1)  That petitioner had sustained an industrial injury for which he was entitled to certain limited costs of medical care and to temporary disability for a brief period; and

(2)  That his subsequent nonindustrial injury was completely separate in result, thus making him ineligible for benefits based on his continuing temporary disability, his increased permanent disability and the costs of additional medical and surgical care.

Petitioner contends primarily that the referee's decision severing the results of the industrial injury from those flowing from the nonindustrial injury is improper in that it is not supported by substantial evidence. Review of the materials upon which the referee's decision was based supports petitioner's position and requires annulment of the board's order. Petitioner also contends that the board's order denying reconsideration is improper in that the board failed to set forth its decision in the manner required by Labor Code section 5908.5 but merely stated that its decision was based on the reasons given in the referee's report which it adopted and incorporated. In view of the conclusions on the first point, we do not reach the second. We note, however, the recent decision of our Supreme Court in *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432] holding (at p. 633 et seq.) that the appeals board may deny a petition for reconsideration by memorandum order incorporating the report of the referee, so long as the latter details the facts and reasons upon which it relies.

On August 14, 1966, petitioner, employed as a general laborer by Olsen Construction Co., suffered an industrial injury to his back. Surgical treatment was required, consisting of a laminectomy and a localized lumbosacral fusion. A 22 percent disability award was made. Petitioner returned to work in August 1967.

On March 8, 1968, when lifting the tongue of a compressor trailer in order to hook it to a pickup truck he felt a sudden pain in his low back with radiation into the right hip. An hour or so later he reported the injury to his foreman and left work to see the physician, Dr. Burns, to whom he was referred by the employer. He was given a new back brace to replace the one he had been wearing. Intensive physical therapy was prescribed—to commence after a one-week rest. He visited Dr. Burns

weekly and returned to work on March 27, 1968. He continued to have back trouble. Petitioner quit his job on May 16, 1968, after being (incorrectly) advised that his acceptance of a settlement in regard to the 1966 injury precluded availability of benefits in any form for additional injury to his back. He testified that the back pain resulting from the March 1968 injury continued to increase and his condition did not improve "to the way it was before the incident occurred with the compressor."

After leaving his job petitioner worked in his family-owned grocery store. Approximately three weeks later, on June 2d or 3d, petitioner tried to lift a case of soda pop from a waist high stack. As he reached for it his back "went out completely; that was it." He fell to the floor and was unable to move or call for help. There he was found by his wife who rushed him by ambulance to the hospital where he was kept for two weeks. He was in and out of various hospitals for both treatment and diagnostic procedures for approximately eight weeks. A second laminectomy and fusion, this time involving a different disc and area than that involved in the 1966 injury was found to be necessary and was performed. After this second fusion, petitioner exhibited various, bizarre symptoms indicative of a psychic depression. These, however, were in addition to episodes of pain and discomfort of a type generally foreseeable after such surgery. Also there is evidence to indicate that the emotional disturbances were somehow connected with worry over the financial obligations necessarily resulting from the 1968 injuries and which were then claimed by the compensation carrier to be noncompensable. Petitioner's emotional status improved markedly after the hearings on petitioner's 1968 injuries at which C. Clifford Hedberg, M. D., was selected as an agreed medical examiner to evaluate definitely petitioner's disability for purposes of both a new petition and his petition to reopen the case of his 1966 injury.

The reports submitted by the attending physicians and that submitted by Dr. Hedberg were in general agreement regarding the severability of his 1968 injuries, etc., from the injury suffered in 1966.

The referee's supplemental decision in the case involving the 1966 injury claim included a finding that no new and further disability resulting from the 1966 injury was shown. Accordingly, it was ordered that petitioner take nothing additional under that claim. The records submitted on review indicate that petitioner did not seek reconsideration of that supplemental decision, and it is supported by substantial evidence.

Quite another matter is the referee's decision (upon which the board's order is based) that the two 1968 incidents were independent of each

other, that they shoud be completely severed and that an award should be made only for the temporary disability of the March 8th incident. The finding is founded upon what the referee terms a "diagnosis" by Dr. Burns. But when the medical reports of both doctors, Burns and Hedberg, and the deposition of the latter, are studied together, the so-called Burns' "diagnosis" turns out to be merely a tentative initial "impression and comment" at a first examination of the patient predating the second injury and totally without ultimate significance. The medical evidence when read as a whole shows a lack of any valid basis for severing the results of the 1968 industrial injury from those flowing from the 1968 nonindustrial injury. Petitioner's orthopedist, Dr. Burns, suggested that the two 1968 injuries be assigned equal value as producing the serious consequences treated in 1968. Dr. Hedberg agreed with, and adopted, Dr. Burns' suggested apportionment. Dr. Hedberg was of the opinion that the industrial injury of March 1968 so affected petitioner's disc structure at L-4 and L-5 that a mildly traumatic subsequent event could produce disproportionately severe symptoms. In his deposition taken after the submission of his report he essentially restated the conclusions and the basis for his report. He referred to the increased symptoms observed by Dr. Burns during the interval between the industrial and nonindustrial injuries of 1968 (e.g., increasing restriction of movement, diminishing reflexes and lengthening radiation of pain) as supporting his opinion that the two 1968 incidents did not involve discrete injuries, i.e., the severe results of the nonindustrial incident would not have occurred but for the industrial injury, and the converse: that the industrial injury alone did not necessitate (or did not result in disclosure necessitating) the medical and surgical treatment required after the additional (nonindustrial) injury in June 1968. Dr. Hedberg further indicated the lumbosacral pathology observed at the time of the double fusion was not all produced by the nonindustrial injury. It would be fair to summarize the doctors' report and testimony by saying that after the industrial accident of March 1968 petitioner was suffering from a disc lesion at L-4 capable of becoming acute in nature upon application of any one of a number of foreseeable minor strains. Although this is a matter of probabilities, the probability of an acute episode was greater than the probability of no such precipitating incident, especially in this case where the initial fusion performed after the 1966 injury at L-5 and S-1 maximized the upper body pressures at the space above the surgically created rigidity of the column, to wit: L-4 and L-5.

The trier of fact may properly disbelieve an expert medical opinion of industrial causation where such opinion is based on demonstrably false information given by the applicant or others, upon irrelevant facts or upon an incorrect legal theory, but it has no power to substitute for this opinion its own determination of causation. (*Smith* v. *Workmen's Comp.*

*App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300]; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798-801 [69 Cal.Rptr. 88, 441 P.2d 928]; *Jones* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648].) A contrary decision, in order to be valid, must find its source, or at least some support, in the materials submitted to the fact-finding body. ▉ The sole evidence in the record before the referee, later before the board, and now before this court, of nonindustrial causation in any degree whatever of petitioner's injuries, as disclosed after the nonindustrial injury, is Dr. Burns' initial "impression and comment" characterized by the referee as a "diagnosis." The accuracy of this "diagnosis" was not sustained by continued events, and in fact was disavowed by Dr. Burns subsequently, as evidenced by the recommendation that equal values be assigned to the two 1968 injuries as causing the condition disclosed after the second injury.

The board correctly points out that certain errors in the information given Dr. Hedberg by petitioner, and upon which Dr. Hedberg relied in his report (although not in his deposition), were properly noted by the referee as being used to minimize the impact of those conclusions drawn by Dr. Hedberg from those misstated facts. However, the board fails to point out any evidence in the record which would support the contrary conclusion reached by the referee of an absence of industrial causation in any degree.

▉ Equally applicable here is the reasoning expressed in the case of *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 440, where the court stated: "It should be stressed that where the undisputed evidence points towards an industrial injury had the board any doubts as to the cause of the injury, it has the means to resolve those doubts. Upon the filing of a petition for reconsideration the board may direct the taking of additional evidence (Lab. Code, § 5906), and the board is given power to direct any employee claiming compensation to be examined by a physician (Lab. Code, § 5701). In the instant case, the board did not follow this procedure and attempt to resolve any doubts it may have had with respect to the inference of industrial causation. Instead it determined in the absence of any supporting evidence to reject the inference of industrial causation, and this it may not do."

It seems appropriate to end this discussion with a reminder that the People of the State of California by article XX, section 21, of the State Constitution have vested the Legislature with "plenary power, unlimited

by any provision of this Constitution" to provide "a complete system of workmen's compensation." The Legislature has provided that the Workmen's Compensation Laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Lab. Code, § 3202.)

The order of the Workmen's Compensation Appeals Board is annulled and the cause remanded to that board for further proceedings consistent with the views herein expressed.

Friedman, J., and Janes, J., concurred.