[Civ. No. 1555. Fifth Dist. Jan. 7, 1972.]

JAMES C. FOWLER, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
TRUCK INSURANCE EXCHANGE et al., Respondents.

---

## COUNSEL

Bradley & Conn and Lloyd L. Hicks for Petitioner.

Mullen & Filippi, Frank J. Filippi and Charles F. Lee for Respondents.

---

## OPINION

**GARGANO, Acting P. J.**—Petitioner is a farm laborer who on March 29, 1968, was seriously injured in an automobile accident; he seeks review of the opinion and order of the Workmen's Compensation Appeals Board denying reconsideration of the referee's findings and award; the referee found that petitioner was injured in the course of his employment with respondent Bell and that his injuries caused permanent partial disability. He also found that part of petitioner's permanent disability was attributable to a preexisting lower back disease and fixed the disability rating, after apportionment, at 30 percent. It is the finding leading to the apportionment that petitioner challenges in this proceeding; he asserts that the finding is not supported by substantial evidence.

The facts are undisputed. Petitioner injured his back in 1962 and was incapacitated for several weeks after that injury. He was examined by Dr. J. C. Williams, an orthopedic surgeon, who later, in a letter written to the Farmer's Insurance Company, indicated that at the time of the 1962 injury petitioner had "a lumbar radicular problem of a mild sort related to the extensive degenerative changes in his lumbar spine." The doctor said that he re-examined petitioner in 1968, following the automobile accident, and that the back condition had not changed substantially since 1962; he opined that the "low back and radicular problem" had nothing significant to do with the automobile accident.

Petitioner testified that within a few months after the 1962 injury his back ceased to hurt him and he was able to work as a farm laborer without pain, discomfort or medication until he was reinjured in the 1968 automobile accident. His testimony was corroborated by several witnesses.

Thomas Norton, who worked with petitioner from 1962 through 1965, said he saw petitioner load boxes weighing between 50 and 75 pounds, slash vines, drive a truck and tractor and swamp grapes and plums. He did not hear petitioner complain of back pain and did not see anything indicating that his fellow-employee was having any back trouble.

Alphonso Brabo testified that he worked with petitioner from 1962 through 1967 and saw him swamping grapes and driving grape stakes, using a 16-pound hammer. The witness explained that swamping grapes involves throwing full boxes of grapes a distance of about six feet to a man on a truck and that he had seen petitioner throw as many as thirty boxes a minute without ever complaining of back pain or back trouble.

W. L. Davidson stated that he worked with petitioner at Sam Bell's ranch building and tearing down fences, stacking cross ties, irrigating and doing general farm work. He said that the railroad cross ties weighed between 80 and 100 pounds and required exertion of 200 to 300 pounds of force to pull them out of the ground. Davidson testified that petitioner did the work without complaint and that he was a better farm worker than anyone else the witness had ever worked with.

Despite the favorable evidence in petitioner's favor, both the referee and the board found that petitioner's present permanent disability was partially attributable to his preexisting disease. They relied on the medical report of Dr. C. C. Hedberg which reads in pertinent part as follows: "On March 26, 1962, he slipped and fell while stooping under a grape wire. . . .

"The patient tells me he recalls he was disabled for work until about July of 1962. His back continued to bother him for another four or five months but he got by because he was assigned to light irrigating work. He then had no further back complaints until after the 1968 accident.

". . . . . . . . . . . . . . . . . . .

"With reference to back complaints, examination shows partial restriction of dorsolumbar spine function consistent with extensive degenerative osteoarthritic and disc degeneration changes which we know to have been present in advanced degree before 1962 when the back was symptomatic for a number of months as the result of an occupational strain sustained in March of that year.

"It is not particularly surprising to find that symptomatic osteoarthritis was reactivated by the stresses imposed upon pre-existing degenerative changes by the circumstances of the 1968 accident. It is therefore believed necessary to accept the validity of the persisting back complaints as being reasonably related to the accident in question from the standpoint of symptomatic aggravation of pre-existing pathology . . .

"My conclusion with reference to the back, therefore is that restricted spinal mobility demonstrated by examination is largely, if not entirely, the result of extensive pre-existing pathology which was of such a degree as to render the patient exceptionally vulnerable to further injury and therefore to justify medical advice to restrict future activities to those of a light nature once it was discovered.

"I have nothing further to add to the previous discussion of the back problem except to emphasize the previously expressed opinion that current persisting subjective back complaints represent symptomatic aggravation contributed by the 1968 accident."

■ It is statutory law that "[i]n case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." (Lab. Code, § 4663.) The statutory mandate, however, "must be read in light of the rule that an employer takes the employee as he finds him at the time of employment and when subsequent injury lightens up or aggravates a previously existing condition rendering it disabling, liability for the full disability without proration is imposed upon the employer." (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79, 83-84 [172 P.2d 884]; *Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615 [52 P.2d 215]; *Jones* v. *Workmen's Comp. App. Bd.*, 267 Cal.App.2d 302 [72 Cal.Rptr. 766].) ■ The appeals board "may apportion the disability under section 4663 only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the 'normal progress' of the pre-existing disease." (*Zemke* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928].) And while the determination as to whether a disability results in whole or in part from the "normal progress of a preexisting disease" or represents a fully compensable lighting up or aggravation of the preexisting condition is a question of fact, the board's decision one way or the other must be supported by substantial evidence; it cannot rest on the reports and opinions of expert medical examiners which are speculative or founded on incorrect legal theories. (*Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794.)

■ Applying these principles to the record before us, we have concluded that the appeals board's decision denying petitioner's petition for reconsideration is not supported by substantial evidence. On the one hand, the medical evidence on which the board relied in order to sustain the referee's finding that the petitioner's present permanent disability is attributable in part to his preexisting pathology does not meet the test articulated by the Supreme Court in the *Zemke* opinion. Dr. Hedberg did not state,

nor does his report imply, that any part of petitioner's present disability was traceable to the "normal progress of his pre-existing disease and would have resulted even in the absence of the second industrial injury;" the essence of the report is merely that in 1968 petitioner had a pre-existing asymptomatic back disease which made him exceptionally vulnerable to further injury and that this condition was aggravated by the injuries he sustained in the 1968 automobile accident. On the other hand, the evidence that no part of petitioner's present disability is traceable to the normal progress of his preexisting condition is convincing. Petitioner's present incapacity did not result from the performance of any task normally associated with his work as a farm laborer but was caused by injuries he sustained in an unrelated automobile accident; petitioner functioned as a farm laborer effectively and efficiently for almost five years after his 1962 injury, and during that period was able to perform numerous arduous tasks without pain, discomfort or medication; the orthopedic surgeon who examined petitioner in 1962 and again in 1968 said that petitioner's back condition had not changed substantially during the interim.

The evidence in this case leads to the inescapable conclusion that the injuries petitioner sustained in the 1968 automobile accident lighted up or aggravated a previously existing asymptomatic condition rendering it disabling. Under these circumstances "liability for the full disability without proration is imposed upon the employer." (*Colonial Ins. Co.* v. *Industrial Acc. Com., supra,* 29 Cal.2d 79, 83-84.)

In rebuttal, respondents suggest that Dr. Hedberg's statement that the preexisting pathology would have justified "medical advice to restrict future activities to those of a light nature once it was discovered" was of itself sufficient to justify the apportionment. They assert that the question is not whether the employee was able to carry on his occupational duties prior to injury, but the extent to which he may have been theretofore disabled. Respondents cite 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed.) section 14.03 (3) (b) for the proposition that: "The proper test of whether pre-existing pathology is a factor for rating exclusion or apportionment is not whether it had compelled a cessation or reduction in occupational activity prior to injury, but whether it was then present in such a degree as would have entitled it, if of industrial origin, to a rating in and of itself."

█ It is true that a person who has sustained a loss of earning power as the result of a prophylactic restriction brought about by an industrial accident has incurred a ratable industrial injury and is entitled to be compensated for the loss of earning power. (*Luchini* v. *Workmen's Comp. App. Bd.,* 7 Cal.App.3d 141 [86 Cal.Rptr. 453].) █ But, the test mentioned by Mr. Hanna in his treatise must be reconciled with the most recent

pronouncements of the California Supreme Court. (See Hanna, *Apportionment of Permanent Disability: A Review of Recent California Court Opinions,* 21 Hastings L.J. 623; *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794.) As we have demonstrated, under these pronouncements the question is not whether petitioner had a preexisting ratable disability when he was injured in the 1968 automobile accident. The question is whether any part of his present permanent disability is traceable to "the normal progress" of the earlier disease. Because the record is devoid of evidence on this critical issue, we annul the board's decision.

The decision of the appeals board is annulled, and the cause is remanded for further proceedings consistent with the views expressed herein.

Brown (G. A.), J., and Franson, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.