[Civ. No. 39424. First Dist., Div. One. May 17, 1977.]

PERMANENTE MEDICAL GROUP,
KAISER FOUNDATION HOSPITALS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
BRENDON O. COYNE et al., Respondents.

[Civ. No. 39461. First Dist., Div. One. May 17, 1977.]

BRENDON O. COYNE et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
CITY OF BENICIA et al., Respondents.

## COUNSEL

Fluss & Sizemore and Isaac Fluss for Petitioner Permanente Medical Group.

Airola & Ringgold and Lowell A. Airola for Petitioner and Respondent Coyne.

T. Groezinger, James J. Vonk, George S. Bjornsen and Frank Evans for other Respondents.

## OPINION

**SIMS, Acting P. J.**—By their respective petitions, Coyne, a fireman formerly employed by the City of Benecia, who is admittedly 100 percent disabled, and his health provider seek review of an order of the Workers' Compensation Appeals Board which denied reconsideration[1] of an award which found that the employee did not sustain an injury arising out of and occurring in the course of his employment by the city, and therefore ordered that the employee-applicant take nothing other than medical legal costs, and denied the lien claim of the health provider.

---

[1] It appears that the health provider's petition for reconsideration was not filed until after 20 days of the date of service of the original award. (See Lab. Code, § 5903.) Nevertheless, since its claim is derivative by virtue of its lien, we consider its contentions without determining whether it was properly before the appeals board or this court. (Cf. *Cavanaugh v. Workmen's Comp. App. Bd.* (1967) 255 Cal.App.2d 181, 182 [62 Cal.Rptr. 871]; and *United States Pipe & Foundry Co. v. Industrial Acc. Com.* (1962) 201 Cal.App.2d 545, 548 [20 Cal.Rptr. 395].)

The record reflects that on February 20, 1974, the employee, at age 37, sustained a cerebral vascular accident or stroke resulting in right hemiplegia and aphasia and total inability to compete in the open labor market. He had been employed as a firefighter-engineer with the city for 10 years and last worked as a fireman February 16, 1974. The employee states that the issues are: (1) whether the cerebral vascular accident constitutes heart trouble within the meaning of Labor Code section 3212;[2] and (2) if so, has the presumption been rebutted? Or, as phrased by the lien claimant, did the appeals board err in refusing to find that the applicant's cerebral vascular disability must be presumed to have resulted from his work as a firefighter pursuant to section 3212?

On a review of the record we summarily denied the petitions for review. Thereafter, the Supreme Court granted a hearing and ordered the matters retransferred to this court with directions to issue writs of review to be heard when the matter was ordered on calendar. We have complied with that mandate, and, after hearing, adhere to our view that the Workers' Compensation Appeals Board properly denied reconsideration of the judge's award. The reasons for our decision can be found in the thoughtful opinion of the judge who heard the case and fairly and fully set forth the facts and issues involved. His opinion with appropriate deletions and additions is as follows:[3]

"On February 20, 1974 applicant sustained a cerebro-vascular accident or stroke resulting in right hemiplegia and aphasia and total inability to compete in the open labor market. No objection has been made to a proposed permanent disability rating of 100%.

"It has been denied, however, that this condition was the result of injury arising out of and occurring in the course of applicant's

[2]Labor Code section 3212 provides, insofar as it is relevant here, as follows: "In the case of members of . . . fire departments of cities . . . excepting those whose principal duties are clerical . . . the term 'injury' includes . . . heart trouble which develops or manifests itself during a period while such member is in the service of such office, staff, department or unit. . . . [¶] Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. [¶] Such . . . heart trouble . . . so developing or manifesting itself . . . shall in no case be attributed to any disease existing prior to such development or manifestation."

[3]Brackets together in this manner [] without enclosing material, are used to indicate deletions from the judge's "Opinion on Decision"; brackets enclosing material (other than editor's added parallel citation) are used to denote insertions or additions by this court.

employment as a firefighter-engineer with the City of Benecia from 1964 to February 2, 1974.

"[The judge was] satisfied from the testimony of applicant's fellow employees and his wife that applicant's job subjected him to considerable stress and that he had begun to have headaches during his employment.

"The direct cause of the stroke was an occlusion of the left internal carotid and left middle cerebral arteries. Furthermore, it seems undisputed that applicant suffered from arteriosclerotic cerebrovascular disease involving at least this portion of his arterial system. [The] stroke occurred at home on February 20, 1974 and [] he had last actually worked as a fireman on February 16.

"Since the stroke did not occur in immediate association with any particular activity at work, one question presented for determination is whether, and to what extent, applicant's work caused or aggravated the disease process in his vascular system which culminated in the stroke and consequent disability. The answer to this question appears to lie within the realm of medical expertise.

"Also, at least partially susceptible to determination with the aid of medical opinion is the further question whether applicant can be considered to have 'heart trouble' which developed or manifested itself during his employment as a fireman, entitling him to the benefit of the presumption under Labor Code section 3212.

"On the question of industrial causation Dr. Breall, in his report of May 13, 1974 stated: 'SUMMARY; In conclusion, Mr. Brendon Coyne suffers from arteriosclerotic occlusive disease in his left carotid artery and left middle cerebral arterial system. This resulted in a marked paralysis of the right side of his body with difficulty in speaking. This condition was the result of an accumulation of arteriosclerosis in these major vessels to the point where blood flow was totally obstructed. [¶] This condition was the result of the gradual accumulation of arteriosclerotic disease in these major arteries. This arteriosclerotic occlusive disease was the result of nonindustrial factors such as inheritance and the aging process. The reason it occurred to the great extent that it did at such an early age is unknown. There is absolutely nothing, however, in the work that Mr. Coyne had performed over the years as a fireman that in any way hastened or precipitated or aggravated this arteriosclerotic process in

his carotid arteries or his cerebral vessels. It is my opinion that this condition would have occurred to the degree that it did irrespective of his prior occupation as a fireman. It would have occurred at the time it did irrespective of any prior activities.'

"Dr. Breall reiterated this opinion when he testified at the hearing of October 2, 1975.

"Dr. Weiss, in his report of May 7, 1975 stated: 'I do not feel that this is industrial (sic) related. Certainly a carotid artery occlusion could not be caused by tension and pressure of work. [¶] I feel that this is not industrial.'

"Dr. Rosenman, reporting for the applicant on June 9, 1975, stated:

" '—Although it is entirely unclear why this young man suffers from such a severe degree of disease in the cerebral arterial system, I am unable to find any evidence that would reasonably relate to (sic) his work as a fireman to his occlusive disease.'

"Dr. Brown, who testified for the applicant on October 2, 1975, was unable to incriminate emotional stress in the development of applicant's arteriosclerotic disease in the cerebral arteries.

██ "In view of the foregoing [the judge] concluded that the evidence does not support the proposition that applicant's work as a fireman caused or aggravated the disease process which caused his stroke and resultant disability. Therefore, compensibility in this case must depend upon whether or not applicant has 'heart trouble' within the meaning of Labor Code section 3212, which developed or manifested itself during his employment as a fireman. If so, he is entitled to a presumption that he sustained injury arising out of and occuring [sic] in the course of such employment.

"[None] of the examiners found any objective or clinical evidence of involvement of the coronary arteries or heart, per se, or any disability associated with the heart as such.

"Dr. Breall, in his report of May 13, 1974, stated: 'Finally, there is absolutely no evidence that Mr. Coyne had any degree of heart trouble of any kind. There is absolutely no evidence that he has any major degree of atherosclerotic obstructive disease of the coronary arteries. Just

because there is a major arterial occlusive condition in another part of the body does not mean to imply that there is a major [*sic*] degree of atherosclerosis or arteriosclerosis of the coronary arteries.'

"At the hearing on October 2, 1975 Dr. Breall testified that he found no objective evidence of heart disease or heart problems or heart trouble of any kind. He said that although the applicant is 100% disabled there is no objective evidence of any heart disability and that all of the disability is related to damage to the brain. He testified, however, that although normal, all of the EKG's had been at rest and that none of them were done on a treadmill or under stress. Finally, he testified that the *process* of cardiovascular disease is the same in the coronary and cerebral arteries. [Italics by judge.]

"Dr. Brown testified that the overwhelming probability is that arteriosclerosis was developing in arteries other than the cerebral arteries because it would be unusual to have arteriosclerosis in one set of arteries and not in the others. In his opinion, if coronary arteriographs were performed, arteriosclerosis of the coronary arteries would probably be found.

"[The judge] considered *Muznik v. WCAB* [(1975) 51 Cal.App.3d 622 (124 Cal.Rptr. 407)] holding that a fireman was entitled to the presumption under Labor Code section 3212 because he had 'heart trouble' which developed or manifested itself during his employment. The Court interpreted 'heart trouble' to mean 'any affliction to, or additional exertion of, the heart caused directly by that organ or to the system to which it belongs, or to it through interaction with other afflicted areas of the body—.' [51 Cal.App.3d at p. 635.]

"This appears . . . to be a very broad interpretation of the statute. [The judge] did not, however, think that the Court intended the presumption to apply to all vascular problems. [] In the *Muznik* case there was a finding of hypertension, whereas applicant's blood pressure in the instant case was normal. Furthermore, in *Muznik* there were findings of ventricular irritability on treadmill testing, an enlarged thoracic aorta, some occlusive aortic arch disease, and a murmur in the chest area; whereas in the instant case there was no clinical evidence of any heart or coronary involvement. In *Muznik* the disability was considered by the Court to arise from the fact that '—with exercise, petitioner's blood pressure increases, and with that increase "signs of insufficiency (are shown) which (cause) him to skip beats." ' The Court, in this connection,

said 'Obviously, petitioner's hypertension, exhibited with exercise, directly affects and "troubles" his heart as it induces this *insufficiency* resulting in ventricular irritability. It is this condition which prevents petitioner from returning to the physically and emotionally strenuous work of a fireman.' [*Id.,* at pp. 627-630 and 636-637.] On the other hand, Mr. Coyne's disability arises solely from a problem with his cerebral arteries and his brain.

"Furthermore, the Court in *Muznik* said in a footnote: 'We do not say that hypertension in every instance, constitutes "heart trouble"; nor do we conclude that disorders in other areas of the body that do not place the heart in a "troubled" condition, qualify as "heart trouble".' [*Id.,* p. 635, fn. 5.]

"Nevertheless, there remains the question of the effect of the decision in *Stephens v. WCAB* (1971) [] [20 Cal.App.3d 461 (97 Cal.Rptr. 713).] That case involved a correctional officer entitled to the benefit of the presumption under Labor Code section 3212.2 if found to have heart trouble which developed or manifested itself during his employment. Mr. Stephens was found to have acute and chronic arteriosclerotic occlusive disease in the right common and external iliac arteries. Apparently there was no clinical evidence of involvement of the heart or coronary arteries as such. The Referee and the Appeals Board found that the applicant's condition was not work induced without considering the effect of Labor Code section 3212.2. The Court annulled the decision and remanded the case for further proceedings and directed that the application of the presumption be considered. The Court said that the Board and its Referee could not disallow applicant's claim in reliance on the opinion of a physician who did not subscribe to the theory that stress and stressful occupations can cause or relate to accelleration [*sic*] of arteriosclerosis, it being the Court's opinion that the Legislature, by adopting the presumption statutes, had concluded otherwise.

"In *Stephens* both medical experts who testified agreed that arteriosclerosis usually begins in the coronary arteries, that the disease in the coronary arteries must reach a relatively high degree of severity before it becomes symptomatic, and that the presence of extensive arteriosclerosis in the iliac arteries made it highly probable that there was also arteriosclerosis of the coronary arteries.

"As previously indicated, Dr. Brown, in the instant case, testified *to* the same effect.

"[The] decision in *Stephens* does not require [a finding] that Mr. Coyne is entitled to the presumption. If a doctor's opinion that non-disabling and asymptomatic coronary arteriosclerosis exists, based upon its presence in another part of the vascular system, had been considered by the *Stephens* Court to be a sufficient basis for the application of the presumption, it seems [] that the Court would simply have ruled that it did apply. Instead, the court remanded the case using the following language: 'Still, this Court may not usurp the Board's exclusive fact finding power. Section 3212.2 creates a presumption. That presumption, however, is rebuttable. It was and is possible, both fairly and legally, for the Board to find that the presumption never arose; *that it was absent because no heart trouble which is disabling exists.* (Italics added.) It could have disbelieved Dr. Friedman; but it could not reject his opinion without substituting the opinion of a doctor willing to accept the premises Dr. DeSilva refuses to accept that stress and tension do cause heart trouble.' [20 Cal.App.3d at p. 468.]

■ "[The judge] concluded that in Mr. Coyne's case no heart trouble *which is disabling exists.* [Italics the judge's.] It follows that he is not entitled to the presumption under Labor Code section 3212. As previously indicated [] the medical evidence will not support a finding that Mr. Coyne's condition was related to his work. [The judge], therefore, [denied] his claim."

We agree with the judge's analysis of *Muznik* and *Stephens* and the conclusions he drew from the evidence. In its petition for hearing the health provider urged that *Muznik* established that any severe and widespread disease constituted "heart trouble" entitling the employee to the presumption created by section 3212. As the judge pointed out, in *Muznik* there was evidence of symptomatic and clinically apparent disabling disease in the heart, and the court carefully noted, "Nor do we conclude that disorders in other areas of the body that do not place the heart in a 'troubled' condition, qualify as 'heart trouble.'" (51 Cal.App.3d at p. 635, fn. 5.)

The employee acknowledges that his stroke resulted from a deprivation of blood to the brain due to a blockage or stoppage of one of the carotid and cerebral arteries located in the neck and skull respectively. He notes that this complication was the result of the disease process of arteriosclerosis which is the same disease process that causes narrowing and closure of coronary vessels, and that where there is an actual stoppage or blockage of the blood flow in the coronary vessels, the

complication is a myocardial infarct or heart attack. He claims that he should be entitled to the presumption because there is evidence from which it can be inferred that if he has arteriosclerosis of the carotid and cerebral arteries, it is most likely that he has the same process in his coronary arteries. He claims he has shown the development of coronary artery disease—"heart trouble"—but not its manifestation. This may be true. There are probably thousands if not millions of adults of varying ages walking around with arteriosclerosis which could be considered coronary heart disease, which has not manifested itself.

The simple facts of this case are that the employee's disability manifested itself from the process of the disease in a part of the body removed from the heart, and all of the medical evidence showed that his stroke was not caused by or occasioned by the stress of his employment. Even if we were to hold, contrary to *Muznik,* that the presumption was to apply to any disability occasioned by a failure anywhere in the entire cardiovascular system, the findings of the judge, as approved by the appeals board, demonstrate that the presumption was rebutted. *Stephens* requires no more.

We are also mindful of the liberal mandate of section 3202 of the Labor Code. We recognize that the Legislature in its wisdom can create disputable presumptions, subject to medical evidence to the contrary. ■ Nevertheless, liberal construction should not require the public, employers or consumers to shoulder the risks of hereditary vascular weaknesses or structural infirmities which are neither occasioned nor aggravated by the stress of employment.

The award is affirmed.

Elkington, J., and Lazarus, J.,* concurred.

A petition for a rehearing was denied June 16, 1977, and the application of petitioner and respondent Coyne for a hearing by the Supreme Court was denied July 14, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.