*621
 
 Opinion
 

 TAMURA, Acting P. J.
 

 Petitioner filed a workers’ compensation claim for disability resulting from a cerebrovascular accident suffered while employed as a deputy sheriff by the County of Orange. On the basis of the medical evidence and the presumption in Labor Code section 3212, the workers’ compensation judge found that the injury arose out of and in the course of employment and made an award for 100 percent permanent disability without apportionment. On respondents’ petition for reconsideration, the board held that the statutory presumption was inapplicable and modified the award by apportioning 40 percent of the disability to the employment and 60 percent to nonindustrial causes. Petitioner seeks review and annulment of the board’s decision.
 

 At the time he suffered the stroke, petitioner was 42 years of age and had been employed as a deputy sheriff for 17 years. He worked from 8 to 10 hours per day and was on 24-hour call every day of the week. His duties required him to deal with many stressful situations, including making arrests and interceding in family disputes. Following a week’s vacation with his family, petitioner was preparing to report to work when he began experiencing numbness in the entire right side of his body which became progressively worse. He was taken to a hospital where his condition was diagnosed as a cerebrovascular accident. He is totally and permanently disabled as a result of the injury.
 

 The medical evidence consisted of reports by three examining physicians, Dr. Edward R. Dickstein (petitioner’s examining physician), Dr. Kenneth M. Smith (medical examiner on behalf of State Compensation Insurance Fund), and Dr. Morton Kritzer (an agreed medical examiner).
 

 Dr. Dickstein was of the opinion that work stresses aggravated his hypertension and an underlying arteriosclerosis, both of which in turn precipitated the cerebrovascular accident. In his opinion, the injury and disability were work related.
 

 Dr. Smith found no relationship between the stroke and the employment. He reasoned that hypertension did not precipitate the episode because petitioner had been on vacation and “was resting at home” at the time of the accident.
 

 
 *622
 
 Dr. Kritzer, the agreed medical examiner, concluded as follows: “There is no question that the patient had a cerebral vascular accident and there is no question at the present time that he is disabled from the same. This patient cannot actually do any work that will require any significant locomotion or standing on his feet for any length of time. Also it could not require the use of his right hand or the use of a good manner of speech. I think that this affectively [sic] prevents him from doing anything on the labor market today. I don’t quite know what exactly he could be rehabilitated to unless it is some sedentary job where he does not have to be clearly [sic] and as well as a normal person. He is in need of medical care for the results of his cerebral vascular accident for the foreseeable future, the amount and frequency of visits being dependent upon his symptoms and findings. Because of scarring in this area, he evidently [in] March, 1976, developed some form of focal seizures and because of this has been placed on Dilantin which seems to control him and he has no further seizures. There is no question in my mind that this patient’s cerebral vascular accident was aggravated, as to etiology, by his hypertension. I do believe that in the type of work he did his hypertension since 1972, was aggravated by his occupation. The aggravation of his hypertension by his occupation, I think, was approximately 40%, 60% has to do with factors that causes [sic] people to have hypertension, of the essential type. I cannot think of anything else in this patient’s occupation that’s going to increase his cerebral arteriosclerosis to the point where he would have thrombosis and an infarct. Therefore, I believe that 40% of his present disability had to do with his occupational aggravation. [¶] The patient has hypertension and in itself, it is a disabling factor, it is a propholactic [sic] disability, it is permanent and stationery [sic] for your rating purposes as is the CVA, and it was aggravated by his occupation by the same 40% only since 1972 when it became evident. The disability for hypertension alone in its propholactic [sic] stages is to avoid strenuous activity and not work in an emotionally trying situation. He will need some medication for this and therefore, medical supervision for the foreseeable future, the amount and frequency of visits being dependent upon his symptoms and findings.”
 

 Applying the presumption in Labor Code section 3212, the workers’ compensation judge found that the injury arose out of and in the course of the employment resulting in 100 percent permanent disability and determined that there was no legal basis for apportionment. In its opinion and decision after reconsideration, the board, on the authority of
 
 Permanente Medical Group
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1977) 69 Cal.App.3d 770 [138 Cal.Rptr. 373], held that the presumption and
 
 *623
 
 nonattribution clause in Labor Code section 3212 were inapplicable. On the basis of Dr. Kritzer’s report, the board found that only 40 percent of the applicant’s disability was due to his employment and amended the award accordingly.
 

 Petitioner contends: (1) The board erred in denying him the benefit of the presumption in Labor Code section 3212, and (2) even in the absence of the presumption, apportionment was not supported by substantial evidence. For reasons to follow, we have concluded that on the basis of the medical evidence, petitioner was not entitled to the benefit of the statutory presumption. We have further concluded, however, that the board’s decision on apportionment was not supported by the evidence and must be annulled.
 

 I
 

 With respect to persons engaged in active law enforcement, Labor Code section 3212 defines the term injury as including “heart trouble” which develops during the period of service and provides that “heart trouble” so developing “shall be presumed to arise out of and in the course of the employment.” The section further provides: “Such . . . heart trouble ... so developing or manifesting itself in such cases shall in no case be attributed to any disease existing prior to such development or manifestation.”
 

 Insofar as causation is concerned, the board, without the aid of the statutory presumption, found that the injury was 40 percent work related. However, if petitioner had been entitled to the benefit of the presumption, the nonattribution clause of Labor Code section 3212 would have precluded apportionment of the disability to any disease existing before the injury.
 
 (Muznik
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1975) 51 Cal.App.3d 622, 638-639 [124 Cal.Rptr. 407].)
 

 Although there was no evidence of a disease or symptomatology of the heart or the coronary arteries, petitioner contends that inasmuch as the board found (in accordance with Dr. Kritzer’s report) that the etiology of the cerebrovascular accident was hypertension aggravated by the stresses and strains of the employment, the injury resulted from “heart trouble” within the meaning of the statute. Petitioner argues that since additional heart exertion is required to pump blood through the body of one suffering from hypertension, a stroke resulting from hypertension is an injury coming within the meaning of the term “heart
 
 *624
 
 trouble.” Petitioner contends that this result is compelled by
 
 Muznik
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 51 Cal.App.3d 622.
 

 In
 
 Muznik,
 
 a fireman suffered from dizziness, nausea, shortness of breath, nervousness, sleeplessness, and perspiration and was unable to continue his employment as a fireman.
 
 (Id.,
 
 at p. 626.) There was medical evidence that the applicant suffered from hypertension and, in addition, that tests revealed heart murmur, “skipped beats,” and “ventricular irritability.”
 
 (Id.,
 
 at pp. 627-629.) Applicant also had a history of an enlarged aorta.
 
 (Id.,
 
 at p. 629.) The board refused to apply the presumption in Labor Code section 3212 and the applicant sought review.
 
 (Id.,
 
 at p. 625.) The court held that the board adopted an unduly restrictive definition of “heart trouble” in declining to apply the statutory presumption. (I
 
 d.,
 
 at p. 635.) The court observed that the term “heart trouble” was intended to be liberally construed and to encompass “any affliction to, or additional exertion of, the heart caused directly by that organ or the system to which it belongs, or to it through interaction with other afflicted areas of the body, which, though not envisioned in 1939, might be produced by the stress and strain of the particular jobs covered by the section.”
 
 (Id.,
 
 fn. omitted.) However, the court added a caveat in a footnote that it was not saying “that hypertension, in every instance, constitutes ‘heart trouble,’ ” or “that disorders in other areas of the body that do not place the heart in a ‘troubled’ condition, qualify as ‘heart trouble.’ ”
 
 (Id.,
 
 fn. 5.)
 

 In the case at bench, unlike
 
 Muznik,
 
 there was no medical evidence that petitioner’s hypertension placed the heart in a “troubled condition.” Dr. Dickstein reported normal sinus rhythm, no heart murmur, normal ventricular pattern, and a normal electrocardiogram. Dr. Kritzer’s findings were to the same effect; he found “[n]o evidence of hypertensive heart disease.” Accordingly,
 
 Muznik
 
 does not compel the conclusion that petitioner was entitled to the benefit of the statutory presumption.
 

 Permanente Medical Group
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 69 Cal.App.3d 770, the case relied upon by the board, involved a fireman who suffered a stroke while at home four days after the last day he worked as a fireman.
 
 (Id.,
 
 at p. 773.) The workers’ compensation judge found that the injury did not arise out of and in the course of his employment and the board denied reconsideration.
 
 (Id.,
 
 at p. 772.) The medical evidence indicated that the stroke was caused by an occlusion of the left internal carotid (artery in the neck leading to the brain) and the left cerebral arteries.
 
 (Id.,
 
 at p. 774.) All of the doctors, however, were of
 
 *625
 
 the opinion that applicant’s work did not aggravate, hasten or precipitate the injury
 
 (id.,
 
 at pp. 774-775); one of the doctors opined that the cerebrovascular accident would have occurred at the time it did irrespective of his occupation as a fireman
 
 (Id.,
 
 at p. 775). The reviewing court held that the board properly declined . to apply the statutory presumption, stating that “[e]ven if we were to hold . . . that the presumption was to apply to any disability occasioned by a failure anywhere in the entire cardiovascular system, the findings of the judge, as approved by the appeals board, demonstrate that the presumption was rebutted.”
 
 (Id.,
 
 at p. 779.)
 

 Unlike
 
 Permanente,
 
 Dr. Kritzer as well as petitioner’s examining doctor were of the opinion, and the board found, that the stresses and strains of petitioner’s employment aggravated the hypertension which precipitated the cerebrovascular accident. Thus, neither
 
 Muznik
 
 nor
 
 Permanente
 
 squarely decides the precise issue before us. We are, however, in agreement with the
 
 Muznik
 
 court’s view that hypertension in every instance does not necessarily constitute “heart trouble” and “that disorders in other areas of the body that do not place the heart in a ‘troubled’ condition, [do not] qualify as ‘heart trouble.’ ”
 
 (Muznik
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 51 Cal.App.3d 622, 635, fn. 5.) In
 
 Muznik,
 
 there was medical evidence that the hypertension did place the heart in a “troubled condition.” Here, there is an absence of such medical evidence. On the state of the medical evidence in the instant case, we conclude that the board properly declined to apply the statutory presumption.
 

 II
 

 We turn to the issue of apportionment. As explained earlier, if applicant had been entitled to the benefit of the presumption in Labor Code section 3212, the nonattribution provision of that section would have precluded apportionment. Since we have concluded that the presumption was not available, we must determine whether apportionment was nevertheless supported by the evidence.
 

 The pertinent statute governing apportionment is Labor Code section 4663. It provides: “In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury.”
 

 
 *626
 
 The section must be read in light of the settled principle that an employer takes the employee as he finds him at the time of the employment. “Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section ‘only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the “normal progress” ’ of the preexisting disease. (E.g.,
 
 Smith
 
 v.
 
 Workmen’s Comp. App. Bd.,
 
 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822];
 
 Granado
 
 v.
 
 Workmen’s Comp. App. Bd.,
 
 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294];
 
 Zemke
 
 v.
 
 Workmen’s Comp. App. Bd.,
 
 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928];
 
 Berry
 
 v.
 
 Workmen’s Comp. App. Bd.,
 
 68 Cal.2d 786, 789 et seq. [69 Cal.Rptr. 68, 441 P.2d 908];
 
 Reynolds Elec. etc. Co.
 
 v.
 
 Workmen’s Comp. App. Bd.,
 
 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102];
 
 Colonial Ins. Co.
 
 v.
 
 Industrial Acc. Com.,
 
 29 Cal.2d 79, 83-86 [172 P.2d 884];
 
 Tanenbaum
 
 v.
 
 Industrial Acc. Com., 4
 
 Cal.2d 615, 617-618 [52 P.2d 215].)”
 
 (Ballard
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1971) 3 Cal.3d 832, 837 [91 Cal.Rptr. 1, 478 P.2d 937].)
 

 “ ‘The underlying theory is that the employer takes the employee subject to his condition when he enters the employment, and that therefore compensation is not to be denied merely because the workman’s physical condition was such as to cause him to suffer a disability from an injury which ordinarily, given a stronger and healthier constitution, would have caused little or no inconvenience.’
 
 (Tanenbaum
 
 v.
 
 Industrial Acc. Com., supra, 4
 
 Cal.2d at p. 617;
 
 Colonial Ins. Co.
 
 v.
 
 Industrial Acc. Com., supra, 29
 
 Cal.2d [79] at p. 84 [172 P.2d 884];
 
 Associated Indem. Corp.
 
 v.
 
 Industrial Acc. Com.
 
 (1953) 120 Cal.App.2d 423, 425-426 [261 P.2d 25].)”
 
 (Zemke
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1968) 68 Cal.2d 794, 800 [69 Cal.Rptr. 88, 441 P.2d 928].)
 

 Both Dr. Dickstein and Dr. Kritzer were of the opinion that the stresses and strains of applicant’s employment aggravated the hypertension which precipitated the cerebrovascular accident and that applicant was permanently and totally disabled from gainful employment. The judge found 100 percent permanent disability and this finding was not disturbed by the board. However, on the basis of Dr. Kritzer’s opinion, the board apportioned 60 percent of the disability to nonindustrial causes. In so doing, the board erred.
 

 
 *627
 
 Labor Code section 4663 provides for apportionment of
 
 disability,
 
 not apportionment of cause. The issue before the board was whether applicant’s employment was a “contributing cause” of his disability.
 
 (Lamb
 
 v.
 
 Workmen’s Comp. Appeals Bd.
 
 (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978].) Since the board found on the basis of Dr. Kritzer’s report that aggravation of the hypertension from work stress was a
 
 contributing cause
 
 of the cerebrovascular accident which in turn accounted for the total and permanent disability rating, apportionment was not justified. (See
 
 Franklin
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1978) 79 Cal.App.3d 224, 247 [145 Cal.Rptr. 22];
 
 Bstandig
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1977) 68 Cal.App.3d 988, 997 [137 Cal.Rptr. 713].) The disability resulted, not from the normal progression of hypertension, but from the cerebrovascular accident. There was no medical evidence that the accident would have occurred when it did without the aggravation of hypertension by work stresses. To permit apportionment in the instant case would run counter to the settled principle that the employer takes the employee as he finds him at the time of employment and that apportionment under Labor Code section 4663 is proper “ ‘only in those cases in which part of the
 
 disability
 
 would have resulted, in the absence of the industrial injury, from the “normal progress” ’ of the preexisting disease.”
 
 (Ballard
 
 v.
 
 Workmen’s Comp. App. Bd., supra,
 
 3 Cal.3d 832, 837, italics added.)
 

 The question of apportionment under Labor Code section 4663 was the subject of an elaborate discussion in the recent case of
 
 Franklin
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 79 Cal.App.3d 224. That case involved a nurse who suffered a myocardial infarct while working.
 
 (Id.,
 
 at p. 230.) There was evidence that she had a history of high Cholesterol in the blood and coronary arteriosclerosis.
 
 (Id.,
 
 at p. 233.) The reviewing court observed that there were two components to applicant’s disability; namely, the disability due to the infarct and the disability due to the underlying cardiovascular disease.
 
 (Id.,
 
 at p. 247.) It held that the disability due to the infarct was wholly the liability of the employer “because industrial factors aggravated the heart disease and accelerated the occurrence of the infarct, which absent the industrial exposure would not have occurred when it did.”
 
 (Id.,
 
 fn. omitted.) The court, therefore, concluded that if all of the “present disability rating can be accounted by the disability from the infarct, then there is no apportionment of the award and the inquiry regarding apportionment pursuant to section 4663 is ended.”
 
 (Id.,
 
 at p. 248.) That is precisely the situation in the case at bench; all of the
 
 disability
 
 is accounted for by the cerebrovascular accident. Dr. Kritzer, while agreeing that applicant is totally and
 
 *628
 
 permanently disabled as a result of the cerebrovascular accident, was of the opinion that the disability should be apportioned because 60 percent of applicant’s hypertension was attributable to nonindustrial causes. The doctor’s opinion on apportionment being based upon an erroneous legal theory, it cannot serve as an evidentiary basis for apportionment.
 
 (Zemke
 
 v.
 
 Workmen’s Comp. App. Bd., supra,
 
 68 Cal.2d 794, 800-801.)
 

 The State Compensation Insurance Fund relies upon
 
 Baker
 
 v.
 
 Industrial Acc. Com.
 
 (1966) 243 Cal.App.2d 380 [52 Cal.Rptr. 276], as controlling authority for the apportionment. However, as pointed out in
 
 Franklin
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 79 Cal.App.3d 224, 246, footnote 8,
 
 Baker
 
 is no longer viable authority on apportionment for two reasons: (1) The substantial evidence test as applied in
 
 Baker
 
 has been expressly disapproved by the Supreme Court in
 
 LeVesque
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1970) 1 Cal.3d 627, 636-637 [83 Cal.Rptr. 208, 463 P.2d 432], and (2) the type of medical opinion relied upon in
 
 Baker
 
 to support apportionment has since been held to be based on an erroneous legal theory and insufficient to support apportionment (see generally
 
 Zemke
 
 v.
 
 Workmen’s Comp. App. Bd., supra,
 
 68 Cal.2d 794, 800-801;
 
 Berry
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1968) 68 Cal.2d 786, 792-793 [69 Cal.Rptr. 68, 441 P.2d 908]).
 

 We conclude that there was no substantial evidence in the record to support the apportionment ordered by the board.
 

 The board’s decision is annulled and the matter is remanded for further proceedings consistent with this opinion.
 

 Kaufman, J., and McDaniel, J., concurred.