Claim of Claude McCARLEY, an employee of W. H. Kibbie, Company.

STATE of Wyoming ex rel. WORKER'S COMPENSATION DIVISION, Appellant (Objector-defendant below),

v.

Claude McCARLEY, an employee of W. H. Kibbie, Company, Appellee (Claimant below).

No. 5033.

Supreme Court of Wyoming.

March 2, 1979.

John J. Rooney, Acting Atty. Gen., and Daniel E. White, Asst. Atty. Gen., Cheyenne, for appellant.

Greg L. Goddard, County and Pros. Atty., Buffalo, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

ROSE, Justice.

This case was initiated on March 12, 1978, in the District Court of Johnson County, Wyoming, by a worker's report of accident, together with an application and claim for award under the Wyoming Worker's Compensation Act. The report states that Mr. McCarley suffered a disability commencing February 18, 1978, as a result of a disease or illness diagnosed as a myocardial infarction. The document relates that the injury, illness, or disease occurred in the following manner:

"Came on slowly—Pain in chest—2 or 3 weeks before—high Blood Pressure reported by Company nurse."

The application and claim for award requested payment of temporary total disability benefits for the period beginning February 19, 1978, and ending March 15, 1978. It relates that the appellee

". . . was diseased on 2/18/78 while engaged in his duties in extra-hazardous employment for the said employer on a mountain W of Buffalo in Johnson County, Wyoming. . . ."

The application further states that the appellee was diseased in the following manner:

"Riding on snowmachine—High Blood pressure reported by Company nurse 2 to 3 weeks before."

On March 28, 1978, the trial court entered an order of award for temporary total disability benefits in the amount claimed, whereupon the appellant filed its petition to reopen the appellee's case and stay the order of award of temporary total disability benefits pending an inquiry into the facts and circumstances surrounding the appellee's myocardial infarction. A trial was held June 13, 1978, to determine whether the appellee's application satisfied the conditions for compensability set forth in § 27–12–603(b), W.S.1977. This statute provides:

"(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particu-

* At the time this case was submitted on briefs (oral argument having been waived), Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been re- tained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

lar employment, and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion."

As foreman, the appellee customarily supervised a crew of eight workers. He was required to arrange the order and schedule of construction tasks to be performed and to insure that his crew had the proper tools and materials to complete the work assigned. In the latter part of January, 1978, McCarley undertook the supervision of a double crew of sixteen men in the construction of an ash hopper at the Wyodak Power Plant in the Gillette, Wyoming area and has identified this period of time as the relevant period of employment stress.

During the afternoon of February 17, 1978, the worker did a lot of ladder-climbing while pursuing his employment duties. He slept late on February 18, 1978, and upon arising, Mr. McCarley and his son drove to Pines Lodge in the mountains near Buffalo, Wyoming, to load two snowmachines which he had stored there. At this time, he was not on company business. The appellee started both machines and "jumped" one of them onto his trailer, after which he and his son drove the other snowmachine to the Pines Lodge for a Coke. It was here that the claimant began to experience chest pains which necessitated the calling of an ambulance.

McCarley was admitted to Johnson County Memorial Hospital at approximately 6:00 p. m. on February 18, 1978, and medical tests subsequently performed by Mahlon Hiestand, M.D., indicated that he had suffered a myocardial infarction sometime during the afternoon hours of February 18, 1978. The appellee continued to have cardiac problems, which eventually required treatment by quadruple coronary artery bypass surgery.

Dr. Hiestand, who testified for the appellant, said that immediately prior to the myocardial infarction, the appellee was suffering from severe involvement of the coronary arteries with plaque, obstructive-type disease. The doctor further testified that occupational stress can cause elevation of blood pressure which in turn can contribute to the formation of arteriosclerotic plaque in the coronary artery system. However, he was unable to estimate the extent to which occupational stress contributed to the appellee's coronary artery disease, and on cross-examination admitted that such stress has not been demonstrated statistically to be a strong factor in the development of the disease. In this regard, the doctor further characterized coronary artery disease as being mainly related to nonoccupational factors, such as smoking, diabetes, family history, and high-cholesterol levels in the blood.

Dr. Hiestand was unable to conclude that the physical exertion which the appellee engaged in on February 17, 1978, precipitated the heart attack on February 18, 1978. Rather, he was of the opinion that the process of loading the snowmachines was the event which brought about the occurrence of the heart attack at that particular time and place. Low oxygen, tension and high altitude were also cited as causative factors in Dr. Hiestand's written report.

The appellant urges the following alleged errors:

"I. The record is devoid of any evidence to show that there was a direct causal connection between the appellee's work activities and his myocardial infarction on February 18, 1978.

"II. The record is devoid of any evidence to show that the acute symptoms of the appellee's myocardial infarction were clearly manifested within four hours after any employment-related exertion."

Section 27–12–603(b), W.S.1977, makes four requirements:

(1) The claimant must establish a period of employment stress unusual or abnormal for employees in claimant's occupations;

(2) Claimant must show that he or she engaged in some exertion during the period of unusual or abnormal employment stress;

(3) Claimant must establish by competent medical evidence a direct causal connection between such exertion and the myocardial infarction; and

(4) Claimant must show that the acute symptoms of the cardiac difficulty were clearly manifested within four hours after the alleged causative exertion.

Even if we were able to find record testimony establishing the required period of unusual employment stress during which the appellee engaged in exertion—i. e., legal causation—*there simply is no evidence of medical causation in this record*! Both must be present before the claimant will be awarded benefits.

Furthermore, there is no evidence to support the requirement that the acute symptom of the cardiac difficulty manifested itself within four hours after the alleged employment-related causative exertion. We will reverse.

### ARGUMENT NO. I

*Causal Connection Between Work Activities and Appellee's Myocardial Infarction on February 18, 1978*

■ The only exertion experienced during purported unusual work-connected stress is the ladder-climbing on February 17, 1978. The appellee's testimony with respect to climbing is the following:

"Q. So, essentially what you are saying then is this causative exertion on the 17th caused your heart attack which occurred around noon on the 18th?

"A. No, sir, I didn't say it caused it. I said it contributed to it."

The doctor's testimony on the subject is the following:

"Q. Now, in your opinion,—you have heard the claimant testify that he engaged in exertion by climbing ladders on February 17. Now, in your opinion, is there any direct causal connection between that exertion on the 17th and the fact that this heart attack occurred on the 18th around noon, of thereafter [sic]?

"A. If we are talking strictly in terms of physical exertion, we would expect the onset of chest pain, the time of the injury to the heart, to be related very closely, within a matter of minutes to a couple of hours after that exertion, if that was really a precipitating event.

"Q. In your opinion, was this a precipitating event, the exertion on the 17th?

"A. No, not in his case.

"Q. And what would you say the precipitating event was?

"A. I think it's reasonable that the process of loading the snowmobile, even riding it, and as he said, jumping it on the back of a trailer, where he was having to grip and squeeze on the handle of the snowmobile, tense himself, that this could have been the exertion that precipitated it at that time.

"Q. So, in other words, in your opinion, there is no direct causal connection between the exertion on the 17th and the fact that a myocardial infarction occurred on the 18th?

"A. I don't think so, no."

For the sake of discussion, even if we were to assume that the climbing of the ladders on the 17th qualified as exertion during a period of unusual stress engaged in while appellee was in the course of his employment—there is, nevertheless, no competent evidence to establish the necessary medical causation. This is a requirement of the statute. The statute says such coronary condition is not compensable unless

"the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, . . ."

Here, the doctor says the precipitating exertion was not the ladder-climbing on the 17th, which was undertaken while the worker was in the course of his employment, but, instead, the triggering incident was the snowmobile activity on the 18th,

which exertion *was not* undertaken while in the course of the appellee's employment. The required medical causation is not shown and, therefore, the facts simply cannot support the judgment.

The claimant, in *Beslanwitch v. Valley Dodge Center, Inc.*, 98 Idaho 390, 565 P.2d 583 (1977), was a business manager for an automobile dealership who, for five months preceding his heart attack, had experienced employment stress due to low profits, the energy crisis, and personnel turnover. He experienced chest pain on the job approximately ten days prior to his myocardial infarction. The court, in commenting with approval upon the commission's action, said:

"... After considering the evidence, the Commission decided that appellant's heart attack resulted from his coronary artery disease rather than from his employment. In reaching that decision, the Commission thought it significant that appellant could point to no unusual, employment-related factor which occurred at the time of his heart attack and which could be identified as causing it. ..." 565 P.2d at 584.

The claimant, in *Landreneau v. Travelers Insurance Co.*, La.App., 345 So.2d 177 (1977), was the head of a parts department for a truck and equipment company. His duties required moderate physical exertion. He had, since 1961, been under treatment for high blood pressure and had suffered a prior heart attack. On September 14, 1973, the claimant suffered a heart attack while getting dressed for work, and benefits were claimed on the ground that employment-related stress caused the attack. Medical witnesses were, however, unable to state that there was any direct causal relationship between the claimant's employment stress and his myocardial infarction. Accordingly, benefits were denied. The Louisiana Appellate Court, in affirming, said:

"In the instant suit plaintiff was never subjected to a violent trauma, and no incident occurred while he was on the job which could be pointed to as the cause of his heart attack or as the beginning of his period of disability. ...

\* \* \* \* \* \*

"We have found that in the present suit plaintiff's employment required very little physical effort or exertion. He was not on the job, and he thus was not discharging his usual and customary duties, when his heart attack occurred. And, the evidence fails to show a causal relationship between his employment and the sudden giving way of a part of his body. ..." 345 So.2d at 179 and 180.

*Permanente Medical Group v. Workers' Compensation Appeals Board*, 69 Cal. App.3d 770, 138 Cal.Rptr. 373 (1977), involved a firefighter whose last day of work preceded by four days the date upon which he suffered a stroke resulting in permanent total disability. The testimony of claimant's wife and co-employees indicated that the claimant experienced headaches as a result of employment stress prior to the stroke. However, a doctor stated that the claimant was suffering from arteriosclerotic occlusive disease in the left carotid artery and left middle cerebral arterial system which condition was the result of an accumulation of arteriosclerosis in these major vessels—and that this arteriosclerotic occlusive disease was the result of nonindustrial factors such as inheritance and the aging process. A second doctor stated that he was unable to find any evidence that the disease was related to the claimant's work as a fireman. The trial court's finding that the evidence did not support the proposition that the claimant's work caused or aggravated the disease process which caused the stroke was sustained.

See, similarly, *Gardner v. Employers Mutual Liability Insurance Company*, 139 Ga. App. 107, 228 S.E.2d 27 (1976); *Woods v. Peerless Plastics, Inc.*, 220 Kan. 786, 556 P.2d 455 (1976); *Carter v. Kansas City Fire & Marine Ins. Company*, 138 Ga.App. 601, 226 S.E.2d 755 (1976); *Muntzert v. A.B.C. Drug Company*, 206 Kan. 331, 478 P.2d 198 (1970); and *Dolan v. Steele*, 207 Kan. 640, 485 P.2d 1318 (1971).

Assuming, as we must, that we are bound to consider only the evidence most favor-

able to the appellee and give to him the benefit of every favorable inference, there is still no proof of medical causation in this record. Any extra exertion which occurred on the job has not been medically connected with the heart attack. In fact, the admissible evidence is exactly to the contrary. The doctor said the heart attack triggering-factor was the jumping of the snowmobile on the 18th, when the appellee was not on the job, and it *was not* the climbing of the ladders on the 17th, which took place when he was on the job. Therefore, while the required legal causation may have been present for appellate decision-making purposes (i. e., the climbing of ladders while on the job), the required medical causation was not.

## ARGUMENT NO. II

### Myocardial Symptoms and the
### Four-Hour Requirement

██ Under the statute, the claimant is required to show that the acute symptoms of the cardiac difficulty are manifested within four hours after the alleged causative exertion.

The work-connected exertion contended for by the claimant occurred on the 17th of February during working hours ending at 5:00 p. m. The heart-attack symptom manifested itself during the afternoon of the 18th when the appellee was not involved in his employment at a time when, by his own testimony, he was not under any work-connected stress. The statutory four-hour requirement is, therefore, not complied with.

We agree with the statement of the appellant when it says:

"There is therefore no evidence in the record to show that the acute symptoms of the Appellee's myocardial infarction were clearly manifested within four hours after any causative exertion occurring during any period of employment stress. There is a total failure of proof as to this requirement explicitly set forth in W.S. 27–12–603(b). In the absence of compliance with the conditions for compensability set forth in that statute, the trial court was without authority to enter an order of award of worker's compensation benefits."

We need not cite authority for our holding on this issue. The statute is not ambiguous and, therefore, we can indulge in no statutory-interpretation exercises. The plain English, understandable language of the statute speaks for itself and, therefore, settles the question.

Reversed.