[Civ. No. 45545. First Dist., Div. One. May 4, 1979.]

ROBERT C. HAMILTON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
COUNTY OF ALAMEDA et al., Respondents.

Counsel

Airola & Ringgold and Kathryn E. Ringgold for Petitioner.

James J. Vonk, Robert M. Jakob, Arthur Hershenson, Frank Evans and Benjamin Cintz for Respondents.

Opinion

ELKINGTON, J.—Robert C. Hamilton was employed as a deputy sheriff of Alameda County throughout the 25-year period, March 31, 1948, through March 31, 1973, on which latter date, at age 57, he took normal (nondisability) retirement. About 4 years later, January 12, 1977, at age 60 he petitioned the Workers' Compensation Appeals Board (Board) for compensation, claiming to have been disabled by cardiovascular disease[1] during the course of his employment by the county. The Board ordered that the requested relief be denied. We review that order.

We interpret Hamilton's factual contention to be that his claimed disability resulted from work-incurred hypertension,[2] a disease of the cardiovascular system, which is a known precursor of ischemic heart disease.[3]

In our review of the whole record we state the evidence before the Board as it reasonably tends to support the complained of ruling. (*Le Vesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

In 1975, two years after his retirement, Hamilton entered Kaiser hospital for a routine examination. He then weighed 212 pounds, almost

---

[1]Cardiovascular: "Relating to the heart and the blood vessels or the circulation." (Stedman's Medical Dict. (4th unabridged lawyers' ed. 1976) p. 229.)

[2]Hypertension: "High arterial blood pressure." (Stedman's Medical Dict. (4th unabridged lawyers' ed. 1976) p. 674.)

[3]Ischemia: ". . . local anemia due to mechanical obstruction (mainly arterial narrowing) to the blood supply." (*Id.,* p. 725.)

30 pounds more than his present weight. Tests in 1966 had shown the existence of hypertension, which has since been intermittent; it has not progressed. But the examining doctor at that time omitted disclosure of its existence to Hamilton, who did not learn about it until 10 years later and long after his retirement. Until then no doctor or anyone had ever told him he "had a blood pressure problem."

After Hamilton's retirement his drinking habit changed for the worse, and he went, or happened, to see a doctor about it. It was then that he learned for the first time that he had hypertension. The doctor gave no indication that the hypertension had resulted from Hamilton's earlier employment stress. Instead he said "lay off the booze," and recommended a "dry-out clinic" to which Hamilton went for three or four days. But Hamilton did not stop drinking, at least until about a year after he had filed his claim for workers' compensation.

Two doctors testified, or reported, at the Board's proceedings.

The first, Hamilton's selected doctor, reported in December 1976 that Hamilton continues to use "alcohol on a daily basis, and has a medical record suggesting abusive use." His comment on "heart" was "regular rhythm, no adventitious sounds," and he found "hypertension" of an "idiopathic" (unknown) origin, but which had undoubtedly developed while "he was a deputy sheriff. . . ." He further reported: "He shows no present cardiac disability on the basis of his hypertension, but of course the condition is a known precursor of ischemic [see fn. 3, *ante*] heart disease."

The second doctor, a cardiologist appointed by the Board, reported the following:

"Heart: Normal with respect to size, shape and heart sounds. . . . There are no thrills, thrusts, rubs or murmurs.

"Chest X-ray: The heart is normal in size and configuration. There are atherosclerotic [4] changes within the aorta.

"Review of records: I reviewed all of the records that were sent to me regarding Mr. Hamilton. These records included a deposition taken from Mr. Hamilton dated April 29, 1977; a medical report prepared by Dr.

---

[4]Atherosclerosis: A form of arteriosclerosis. (See Stedman's Medical Dict. (4th unabridged lawyers' ed. 1976) p. 136.)

Robert Woods Brown dated December 16, 1976; and the medical records from the Kaiser Foundation Hospital and Permanente Medical Group in Oakland. These records confirm the fact that Mr. Hamilton did indeed begin to have intermittent hypertension since the middle of the 1960's. At times his blood pressure would be quite elevated and at times it would be normal. In addition, the records reveal that Mr. Hamilton suffered from an alcoholic problem. At times he would consume large quantities of alcohol. The records did not reflect the fact that at any time there was heart disease or heart trouble while he worked as a deputy sheriff.

"Cardiac disability: As mentioned previously, it is my opinion that Mr. Hamilton has a 15 percent disability with respect to his heart. This disability evaluation was determined by means of treadmill testing. . . . Individuals with this degree of energy expenditure capability can perform such activities as shoveling ten pounds per shovel ten times per minute, lifting weights not in excess of 70 pounds, walking five miles per hour on a level, bicycling 11 miles per hour on a level, playing competitive badminton or tennis singles, splitting wood, shoveling snow, mowing a lawn by hand, square dancing, light downhill skiing, ski touring two and one-half miles per hour in loose snow, waterskiing, or similar activities. . . . I would classify Mr. Hamilton as an individual with heart disease who has a *disability precluding very heavy work.*

"Industrial liability: In my opinion, there is no evidence in the medical records that Mr. Hamilton did indeed suffer from any type of heart condition at any time while he was employed for the Sheriff's Department of Alameda County. There is ample evidence in the medical records that he did have a labile[5] hypertension. Despite this, there is no evidence that this labile hypertension was in any way associated with a heart condition or heart trouble. . . . It is only in my examination that I was able to find a slight heart condition with a 15 percent disability. In my opinion, this current manifest heart condition most closely conforms to an alcoholic cardiomyopathy. In my opinion, this condition is not industrially related since it was never manifest while he was a deputy sheriff and since it was caused by a nonindustrial agent. In my opinion, the labile hypertension is also a manifestation of alcoholic intake and has nothing at all to do with the work performed by Mr. Hamilton."

The Board found the following: "[T]he applicant did not sustain an injury arising out of and occurring in the course of his employment for

[5]Labile: "Unstable or unsteady; not fixed; characterized by adaptability to alteration or modification." (Stedman's Medical Dict. (4th unabridged lawyers' ed. 1976) p. 751.)

the period March 31, 1948 through March 31, 1973. Applicant's hypertension did not arise out of and occur in the course of his employment nor did his heart trouble so as to be the subject of Labor Code Section 3212. Applicant's minor heart trouble did not develop or manifest itself during his employment as a deputy sheriff for the County of Alameda for the period March 31, 1948 through March 31, 1973."

■ That Hamilton's "injury" and "hypertension" did not arise out of and occur in, and that his later minor heart trouble did not develop or manifest itself during, the course of his employment is thus manifested by the evidence believed by the Board.

Labor Code section 3212, noted in the findings and as relevant here, provides: If a deputy sheriff (or fireman) suffers "heart trouble which develops or manifests itself" during the period of his employment, "in such cases [it] shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, . . ."

Hamilton's "heart trouble" did not, according to the evidence, "develop or manifest itself" during the period of his employment. Nor may "hypertension" reasonably be equated with "heart trouble" because it sometimes, but not necessarily, is a precursor of the latter ailment. Medically as shown by the evidence they are at least, ordinarily distinct pathological conditions. Legal authority agrees. (See *Hart* v. *Workers' Comp. Appeals Bd.,* 82 Cal.App.3d 619, 625 [147 Cal.Rptr. 384]; *Permanente Medical Group* v. *Workers' Comp. Appeals Bd.,* 69 Cal.App.3d 770, 778-779 [138 Cal.Rptr. 373]; *Muznik* v. *Workers' Comp. Appeals Bd.,* 51 Cal.App.3d 622, 635, fn. 5 [124 Cal.Rptr. 407].) In *Stephens* v. *Workmen's Comp. Appeals Bd.,* 20 Cal.App.3d 461, 465 [97 Cal.Rptr. 713], the court said: "We judicially notice and the evidence sustains a seemingly undisputed inference that a sufficiently developed atherosclerosis of the coronary artery is 'heart trouble.' " Here neither the doctors nor the Board disagrees; but the evidence establishes neither "sufficiently developed," nor any, atherosclerosis of the coronary artery during Hamilton's employment. Hamilton himself, at his retirement, was conscious of no hypertension, or cardiovascular disorder, or heart trouble, or coronary arteriosclerosis, or any related disorder.

As said by Justice Sims in *Permanente Medical Group* v. *Workers' Comp. Appeals Bd., supra,* 69 Cal.App.3d 770, 779: "There are probably thousands if not millions of adults of varying ages walking around with

arteriosclerosis which could be considered [undeveloped and unmanifested] coronary heart disease, . . ." Such a condition does not "trouble the heart," and is therefore not reasonably to be deemed "heart trouble" within the meaning of Labor Code section 3212.

The Board's final finding is stated as follows: "It [Hamilton's heart trouble] was brought on by his excessive alcoholic intake that commenced with his retirement and continued until his abstinence from alcohol commencing in January, 1978 after seeking medical advice for his alcohol problem."

This finding, from which it must be concluded that Hamilton's minor heart trouble had its genesis following his retirement as deputy sheriff, is also found to be supported by substantial evidence upon a consideration of the entire record.

Hamilton relies most heavily upon *Muznik* v. *Workers' Comp. Appeals Bd., supra,* 51 Cal.App.3d 622. There the Court of Appeal reversed a finding of the Board that "heart trouble" had *not* developed or manifested itself during Muznik's preretirement employment. (Muznik was a fireman, also covered by Lab. Code, § 3212.) Unlike the case at bench, from the whole record it must have been reasonably concluded that "heart trouble" developed and was first manifested during Muznik's employment. His electrocardiograms were abnormal, his heart had "murmurs" and it "skipped beats." One doctor found symptoms of a "coronary artery occlusion," and another concluded that Muznik's "arteriosclerotic coronary artery disease" "would require lifetime medical care for his heart." And a third doctor diagnosed the case as "generalized arteriosclerotic cardiovascular disease which also probably included significant coronary atherosclerosis." This authority is of no aid to Hamilton.

We have also considered *Stephens* v. *Workmen's Comp. Appeals Bd., supra,* 20 Cal.App.3d 461, where also, an award of the Board was set aside. Stephens, a state prison correctional officer, was covered by Labor Code section 3212.2, a counterpart of section 3212. His work-related injury and disability, and his disability retirement, resulted from, among other things, "acute and chronic arteriosclerotic occlusive disease," which a highly qualified cardiologist opined had already developed into "severe coronary arteriosclerosis." The appellate court from the whole record

concluded that "heart trouble" was indisputably shown, calling for application of the rebuttable presumption of section 3212.2. In the instant case, and as noted, no evidence established the development or manifestation of such heart trouble during Hamilton's employment.

Further, we are of the opinion that were the *rebuttable* presumption of section 3212 treated as applicable, the Board would reasonably have been required, on the entire record before it, to conclude that the presumption was overcome by a preponderance of the evidence.

■ Nor are we persuaded that according to *Stephens* v. *Workmen's Comp. Appeals Bd., supra,* 20 Cal.App.3d 461, 466-467, the Board erred in not rejecting the testimony of the cardiologist witness, Dr. Breall, because of his stated opinion that stress plays no part in the etiology of hypertension. In respect of this contention the Board concluded as follows: "The applicant's hypertension did not arise out of and occur in the course of his employment as a deputy sheriff either in fact or by operation of Labor Code Section 3212. In this case the applicant's hypertension is not 'heart trouble,' it is not causing 'heart trouble' nor is it 'proving troublesome to his heart.' There is no evidence that his present hypertension was caused or aggravated by his occupation as a deputy sheriff. His hypertension is not within the presumption of Labor Code Section 3212 and there is no evidence that it was caused by his occupation. The hypertension, therefore, did not arise out of and occur in the course of his employment as a deputy sheriff for the County of Alameda. There is no credible evidence that the applicant's hypertension has caused or accelerated the arteriosclerosis that the applicant has, along with all of mankind of his age, in his body. There is no evidence that his arteriosclerosis is causing him any disability at the present time. His arteriosclerosis is not an industrial injury. [¶] The applicant relies upon Stephens vs. WCAB [20 Cal.App.3d 461] in an attempt to exclude Dr. Breall's opinion as a matter of law. The applicant's reliance is ill placed. That case has no bearing on this case. In this case arteriosclerosis plays no part in the applicant's present disability. His present disability is directly related to alcoholic abuse. Dr. Breall's solid, credible medical opinion supports the judge's decision." We observe no error.

It is of no consequence that the Board, believing scant contrary evidence, and drawing other inferences, might have reached a different

conclusion. There was substantial evidence on the whole record to support the Board's determination. We are accordingly bound to respect it. (See *Le Vesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 637.)

The award is affirmed.

Racanelli, P. J., and Newsom, J., concurred.